**Ex parte Earl S. HOLLAND, Relator.**

**No. 05–90–01560–CV.**

Court of Appeals of Texas,
Dallas.

March 22, 1991.

Rehearing Denied April 10, 1991.

A. Dale Drake, McKinney, for appellant.

George Roland, McKinney, for appellee.

Before ENOCH, C.J., and LAGARDE and BURNETT, JJ.

## OPINION

LAGARDE, Justice.

In this original habeas corpus proceeding, relator Earl S. Holland (Husband) challenges the trial court's order finding him in contempt and ordering him confined in the Collin County jail for his failure to make child support payments. Husband contends that the order is void because the visiting judge who signed it was without authority to preside in the contempt proceeding. We agree and, accordingly, we order Husband discharged.

In the 199th Judicial District Court, Judge Marvin Blackburn, Jr., signed a final decree divorcing Husband and Verla Sue Holland (Wife) on October 17, 1987. On April 18, 1988, the presiding judge of the First Administrative Judicial Region as-

signed Judge Harold B. Clapp, Senior Judge of the 321st Judicial District Court, to the 199th Judicial District Court to hear cause number 199–50009–87, styled *In the Matter of the Marriage of Verla Sue Holland and Earl S. Holland and in the Interest of a Minor Child.* The assignment was to continue as necessary for Judge Clapp to "complete trial of any case or cases begun during this period, and to pass on motions for new trial and all other matters growing out of cases tried by [Judge Clapp] during this period." Acting under this assignment, Judge Clapp heard a motion to modify Husband's child support obligation and signed a modification order on July 6, 1988. Judge Clapp also signed an order of permanent injunction on that date. Subsequently, Judge Clapp signed an order modifying the July 6, 1988 modification order nunc pro tunc, and he presided over a proceeding resulting in a contempt order signed April 24, 1990.[1]

On August 31, 1990, Wife filed the motion leading to the order of contempt and commitment at issue in this habeas corpus proceeding. On October 22, 1990, Husband filed an objection under section 74.053 of the Texas Government Code to Judge Clapp's presiding over the contempt proceedings. Judge Clapp overruled this objection and, on December 7, 1990, signed the order of contempt and commitment at issue here. Section 74.053 of the Texas Government Code provides, in pertinent part, "If a party to a civil case files a timely objection to the assignment [of a judge assigned under chapter 74], the judge shall not hear the case." Tex. Gov't Code Ann. § 74.053(b) (Vernon Supp.1991). If a party makes a timely objection under section 74.053, disqualification of the assigned judge is automatic, and any subsequent orders that he issues are nullities. *Starnes v. Chapman*, 793 S.W.2d 104, 107 (Tex.App.—Dallas 1990, orig. proceeding); *Curtis v. State*, 762 S.W.2d 958, 959–60 (Tex.App.—Dallas 1988, no writ). An objection is timely if it is made before the first hearing over which the assigned judge is to preside. Tex. Gov't Code Ann. § 74.053(c) (Vernon Supp.1991).

In this case, Husband objected to Judge Clapp's assignment only after Judge Clapp had presided in the prior modification and contempt proceedings. Husband contends, however, that he objected before the first hearing on the motion for contempt which resulted in the December 7, 1990 order at issue here. He argues that Wife's motion for contempt initiated a new proceeding requiring a reassignment of Judge Clapp. Consequently, Husband asserts, his objection under section 74.053 was timely, Judge Clapp's disqualification was mandatory, and the December 7, 1990 order is void. Wife points out that Judge Clapp presided over various post-judgment matters between his assignment and Husband's objection. She argues that Judge Clapp had continuing jurisdiction over post-judgment proceedings and that Husband's objection was untimely.

In support of his argument, Husband relies on *Starnes*. In *Starnes*, the presiding judge of the administrative region assigned Judge Ryan to hear certain litigation between the Browning interests and the Holloway interests. *Starnes*, 793 S.W.2d at 105. The assignment was to continue for a period of time as necessary to allow Judge Ryan to complete the trial of the case and to pass on motions for new trial and all other matters growing out of the case. *Id.* Judge Ryan granted Holloway's motion for summary judgment and severed the remaining unadjudicated claims, making the summary judgment final. This Court reversed the summary judgment on appeal and remanded the case to the trial court. Judge Ryan was reassigned, and Starnes objected to Judge Ryan's hearing the case on remand. *Id.* at 106. Rejecting the argument that Judge Ryan's initial assignment continued after the remand, this Court concluded that Judge Ryan's initial assignment expired

---

1. Husband has provided a certified copy of the trial court's docket sheet in support of his application for writ of habeas corpus. The docket sheet shows trial court activity in addition to that stated in this opinion. This activity does not appear to affect the outcome of this habeas corpus proceeding and the parties do not argue that it does.

along with his plenary power over the summary judgment. *Id.* Consequently, when the case was remanded, Judge Ryan was without authority to proceed further unless he was reassigned and Starnes's objection was timely. *Id.* at 106–07.

█ The April 18, 1988 order assigning Judge Clapp is substantially identical to the order of assignment construed by this Court in *Starnes.* Therefore, under *Starnes,* the April 18, 1988 assignment (and Judge Clapp's authority to rule) expired with the expiration of his plenary power over the July 6, 1988 orders. *See also First City Bank v. Salinas,* 754 S.W.2d 497, 498 (Tex.App.—Corpus Christi 1988, orig. proceeding) (judge's authority to hear personal injury case under similar order of assignment did not extend to court supervision of trust created by settlement); *Roberts v. Ernst,* 668 S.W.2d 843, 846 (Tex. App.—Houston [1st Dist.] 1984, orig. proceeding) (construing judge's authority to rule under similar assignment as ending with his order granting a new trial). A new assignment was necessary to authorize Judge Clapp to hear Wife's August 31, 1990 motion for contempt. *Starnes,* 793 S.W.2d at 106. The record in this case shows no new order of assignment.[2] Since there was no new assignment, Judge Clapp was without authority to preside over the contempt proceedings, and the December 7, 1990 order is void under *Starnes* unless it is distinguishable. *Starnes,* 793 S.W.2d at 106; *Akin v. Tipps,* 668 S.W.2d 432, 434 (Tex.App.—Dallas 1984, orig. proceeding).

This case differs from *Starnes* and the other cases cited above in that it involves a contempt proceeding in a family law matter. Under section 11.05(a) of the Texas Family Code, when a court acquires jurisdiction of a suit affecting the parent-child relationship, it retains continuing, exclusive jurisdiction of various subsequent suits in connection with the child. Contempt proceedings brought to enforce child support

obligations fall within this continuing jurisdiction. *See Ex parte Barnett,* 600 S.W.2d 252, 254–56 (Tex.1980, orig. proceeding). Thus we must consider whether, because of this continuing jurisdiction, Judge Clapp retained jurisdiction to enter the December 7, 1990 order of contempt and commitment.

Section 11.05 by its terms vests continuing jurisdiction in the trial *court* rather than the trial judge. Opinions construing orders of assignment in non-family law matters and cases under the family code have distinguished between an individual judge's authority and the jurisdiction of the court in which he is sitting. *See Alexander v. Russell,* 699 S.W.2d 209, 210 (Tex. 1985) (noting that if the judge of a court with continuing jurisdiction found it necessary to recuse himself, the proper procedure was to have another judge preside in that court rather than transfer the case to a different court); *Salinas,* 754 S.W.2d at 498 (observing that the record showed that the judge had been assigned to hear a specific suit and not to exercise general jurisdiction as the judge of the court to which he was assigned); *Akin,* 668 S.W.2d at 434 (transfer of case to court where judge was assigned to hear another proceeding did not vest judge with authority to hear transferred case); *Ex parte Lowery,* 518 S.W.2d 897, 901–902 (Tex.Civ.App.— Beaumont 1975, orig. proceeding). In *Ex parte Lowery,* the court of appeals expressly rejected the notion that the individual judge who signed the original divorce decree retained a right or duty to enforce that decree in a capacity other than as the presiding judge of the court of continuing jurisdiction. *Lowery,* 518 S.W.2d at 901– 02.

Further, in *Starnes,* this Court construed the trial judge's assignment in light of the rules governing the expiration of a trial court's plenary jurisdiction over its judgment, a period which is generally calculated from the final judgment in a case. The

---

**2.** Husband identifies the April 18, 1988 order of assignment as the order under which Judge Clapp presided over the contempt proceedings leading to the December 7, 1990 order. Judge Clapp's comments at a hearing on the motion for contempt are consistent with Husband's as-

sertion, and Wife has made no attempt to show the existence of any subsequent order of assignment. Therefore, we conclude that Husband has shown that Judge Clapp was presiding only by virtue of the April 18, 1988 order of assignment.

trial court's continuing jurisdiction in a family law proceeding does not in itself prevent a judgment from being final, *see Campbell v. Campbell*, 550 S.W.2d 164, 166 (Tex.Civ.App.—Austin 1977, no writ), and a modification and enforcement order may be a final, appealable judgment. *See Richey v. Bolerjack*, 589 S.W.2d 957, 959 (Tex.1979). Thus, the application of the rule of *Starnes* to this case is not inconsistent with the trial court's continuing jurisdiction.

For these reasons, we conclude that the trial court's continuing jurisdiction in family law matters vested no jurisdiction in Judge Clapp that was independent of the April 18, 1988 order of assignment. Nor did the court's continuing jurisdiction extend the duration of his authority under that assignment. Judge Clapp's assignment expired with the expiration of his plenary power over the July 6, 1988 orders. Absent a new assignment, he was without authority to preside in the contempt proceedings leading to the December 7, 1990 order of contempt and commitment. Consequently, that order is void, and Husband is entitled to be discharged from confinement.