Allan HAWKINS and Anease Elaine
Volkmann Snodgrass,
Appellants,

v.

ESTATE OF William F. VOLKMANN,
Deceased, Appellee.

No. 04–93–00136–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 30, 1994.

Rehearing Denied March 17, 1995.

Allan Hawkins, Midland, for appellants.

John A. Hay, Jr., Davis, Hay, Wittenburg, Davis & Caldwell, San Angelo, James D. Walker, Austin, for appellee.

Before BUTTS, PEEPLES and HARDBERGER, JJ.

HARDBERGER, Justice.

## INTRODUCTION

This is an appeal from an order of sanctions pursuant to Texas Rule of Civil Procedure 13 against an attorney, Allan Hawkins. The underlying suit is a will contest.

■ It is the third time this court has reviewed aspects of this case. The first time was after a summary judgment had been rendered by the trial court against Hawkins' client, Anease Elaine Volkmann Snodgrass. We affirmed the trial court's decision that Snodgrass was not an interested person in the estate, and dismissed her contest. *In re Estate of William F. Volkmann, Deceased,* No. 04–91–00532–CV, 04–91–00619–CV, and 04–91–00380–CV (Tex.App.—San Antonio, March 18, 1992, n.w.h.) (not reported).

The second time was when the trial court granted sanctions against Snodgrass and Hawkins. Both Snodgrass and Hawkins attempted appeals. Snodgrass filed her cost bond on appeal late and failed to file a motion for extension of time.[1] Consequently, this court dismissed her appeal for want of jurisdiction. *Hawkins and Snodgrass v. Estate of Volkmann,* No. 04–93–00136–CV (Tex. App.—San Antonio, June 16, 1993, n.w.h.) (not reported). Hawkins perfected his appeal and this opinion deals with that appeal.

Hawkins, in his appeal of his own sanctions, continues to complain of alleged injustices done to his client, Snodgrass. He says that the trial court was in error in striking the pleadings of Snodgrass, that it was in error to have dismissed her claims with prejudice, that it was in error to impose monetary sanctions against her, and that it was in error to enjoin her from filing further documents or pleadings until these sanctions were paid. In short, Hawkins ignores the fact that all Snodgrass matters are at an end, either through the summary judgment that was affirmed or her subsequent failed attempts to perfect an appeal. None of these issues are before this court and none will be dealt with in this opinion. Whether the trial court erred, or did not err, in its rulings against Snodgrass is now res judicata and final.

Therefore, the sole issues in this appeal are the propriety of the trial court's sanctions against Hawkins as an attorney and not whether Hawkins' client, Snodgrass, was treated properly.

## LEGAL BACKGROUND

William F. Volkmann died in 1990. Application to probate his 1982 will and 1990 codicil were made in the Menard county court. Otis H. Lyckman, the presiding judge of the Menard county court, was an interested party to the will; he voluntarily recused himself and requested the appointment of a new judge to preside over the case. The Governor of Texas appointed Judge Charles

1. Snodgrass retained substitute counsel at the sanctions hearing.

Sherrill to preside. Judge Sherrill appointed Otis H. Lyckman and Awbrey L. Kothmann as temporary administrators of the Estate of William F. Volkmann. Anease Elaine Volkmann Snodgrass, through her attorney, Allan Hawkins, filed a contest to the probate of that will. She and Hawkins also filed a contest to the appointment of Lyckman and Kothmann as temporary administrators of the estate. Snodgrass and Hawkins also requested Judge Sherrill to recuse himself from hearing this case. In response to these motions, Judge Sherrill transferred them to the district court of Menard County. Snodgrass and Hawkins then sought to recuse or disqualify Judge V. Murray Jordan, the judge sitting in the district court, from hearing the case. Snodgrass and Hawkins contested virtually every action taken by the temporary administrators and Judge Jordan.

Eventually, the trial court, by summary judgment, found that Snodgrass was not an interested person in the estate and dismissed her contest. He severed Snodgrass' will contest into a separate proceeding. The summary judgment was affirmed by this court by opinion delivered March 18, 1992.[2] Subsequent to the final judgment removing Snodgrass from the suit, she and Hawkins sought to re-install herself in the will contest by claiming standing as the trustee of her recently deceased father's estate that she had placed into a trust. Snodgrass and Hawkins continued filing contests objecting to Judge Jordan sitting as judge in the case and challenging each request of the temporary administrators to pay the debts of the estate.

### SANCTIONS AGAINST HAWKINS

The trial court, in response to a motion by the temporary administrators, held a hearing to determine if Hawkins (and Snodgrass) should be sanctioned. It was a long hearing, occupying about half the days between April 16, 1992, and June 23, 1992. It ended rather disastrously for Hawkins (and Snodgrass).

The trial court first affirmed its belief in "zealous energetic and good faith representation of clients," but concluded that Hawkins had passed beyond those laudable goals and

had filed pleadings and committed acts that were "groundless and in bad faith." After setting out a number of examples and the history of actions taken by Hawkins, the trial court concluded that Hawkins (and Snodgrass) had no case and had used the tactic of "harassment" to try to force a settlement.

Hawkins was ordered to pay sanctions of $147,660.19. He was also enjoined from "representing any person in the above cause until all sanctions are paid." The trial court also rendered other sanctions against the client, Snodgrass, which are not relevant to this appeal.

Hawkins appeals with fifteen points of error. Some of these points of error, though, complain of the trial court's sanctions toward Snodgrass and will not be discussed.

### HOLDING

We affirm the trial court's granting of the sanctions against Hawkins, but find the amount excessive. We remand this case to the trial court only for a review of the amount of the sanctions against Hawkins. We also find Hawkins' appeal was not frivolous and deny the temporary administrator's cross-point.

### SANCTION AMOUNT

█ Appellant complains in his Point of Error 14 and in his "Brief of the Argument" that the sanctions against him are excessive and unjust. Because we feel this is appellant's strongest point, we discuss it first.

We agree with appellant that a party has a right to contest a will and be heard on the merits. Litigation, conducted in good faith (as well as bad faith), is expensive. Just because one party is causing another party to expend money in defending itself is not objectionable. The problem with the appellant's behavior is, though, that not everything he did was to advance the suit. The trial court found, and we agree, that many of the pleadings and motions were "harassment" and could never have led to a legal goal.

---

2. *See In re Estate of William F. Volkmann*, No. 04–91–00532–CV, 04–91–00691–CV, and 04–91– 00380–CV (Tex.App.—San Antonio, March 18, 1992, n.w.h.) (not reported).

Examples of this are cited in the trial court's order:

1) "Hawkins repeatedly challenged actions taken by the Temporary Administrators without reasonable cause, inquiry or justification";

2) "Hawkins filed "repetitious pleadings, contests and objections [and] ... continually rehash[ed] and reassert[ed] the issues of standing, jurisdiction, right to jury trials on routine estate matters";

3) Hawkins continually sought jury trials on every challenge in order "to delay and prolong the dependent administration"; and

4) "Hawkins filed several Applications to Probate a 1970 Will and 1973 Codicil knowing that the Decedent, WM. F. VOLKMANN, executed several subsequent Wills and Codicils [that revoked] all prior Wills and Codicils"; without making "a reasonable inquiry of persons who had knowledge of the execution of the 1982 Will or 1990 Codicil, of persons who had knowledge of the Decedent's testamentary capacity, or of persons who may have had knowledge of undue influence, fraud or duress prior to or after filing the Will Contest on November 5, 1990," or to determine whether the will he propounded had been expressly revoked.

The trial court found that "Hawkins initiated a course of conduct and trial strategy [including filing 'numerous contests, objections, pleadings and other documents'] designed to unnecessarily confuse the issues, delay the probate proceedings and unduly prolong the dependent administration ... in order to procure a sizable settlement for ... [Snodgrass] and himself"; and that Hawkins took these actions intentionally, willfully, and maliciously, having no "just cause or excuse," and consciously disregarding the rights of the estate's beneficiaries, causing "substantial monetary damage and harm to the Estate."

In assessing sanctions, the trial court should have limited the sanctions to the "harassment" behavior and not the normal and reasonable legal behavior of a will contestant. To the extent that the trial court added up the costs and expenses for everything rather than simply the objectionable behavior, the court erred.

Certain aspects of the testimony did relate strictly to the sanctions hearing. That testimony was offered by Tom C. Massey, an expert witness, who reviewed the probate proceedings and interviewed witnesses in conjunction with the sanctions hearing itself. Larry Bale, an attorney with the law firm representing the temporary administrators of the estate, also testified regarding legal expenses incurred in bringing the sanctions motion.

However, much of the testimony shows that expenses incurred were the result not only of the harassing behavior by Hawkins, but also by the normal incidents of defending a will contest. Sharon Evans, a certified public accountant who handled the estate assets, did segregate expenses as far as excluding expenses that would have been incurred had the estate been an independent administration as called for in the will. However, she included in her expenses the additional costs incurred due to the will contest. The costs of the temporary administration, caused solely by Hawkins' filing of harassing pleadings, was not segregated from the total.

Spencer Kissell, a banker in the Trust Department of the Texas Commerce Bank, testified as to expenses the estate suffered due to the fact that the bank could not turn the estate/trust funds over to the executor of the estate, but had to continue to act as trustee of the accounts for the temporary administrators. While he did testify that he sought legal advice after Snodgrass threatened the bank with a lawsuit should he pay the estate taxes pursuant to a court order, he did not segregate these expenses from the trust charges to the estate from the date of Mr. Volkmann's death to the present time.

John A. Hay, Jr. is one of the attorneys for the temporary administrators and will proponents. He excluded all costs associated with the time the law firm spent in handling normal probate matters that would have arisen in the absence of the will contest and challenge to the temporary administrators. He also excluded costs incurred due to Snod-

grass' appeal from the summary judgment that found her not to be an interested party. However, he specifically testified that the figures he gave included both the will contest and the temporary administration.

Similarly, the temporary administrators of the estate, Otis H. Lyckman and Awbrey L. Kothmann, testified as to the expenses they incurred as temporary administrators without separating expenses for the will contest from the expenses incurred due to the harassing pleadings.

The trial court was unable, with the testimony presented to it, to segregate the costs to the estate for the groundless and harassing pleadings from the normal incidental costs of defending a will contest. The court included amounts not proper as sanctions. The trial court, therefore, abused its discretion in basing sanctions on amounts incurred not as a result of the sanctionable behavior. Because we are remanding that part of the cause concerning the amount of monetary sanctions to the trial court, we offer some guidelines upon which the court might base its determination. These are some of the guidelines proposed by Justice Gonzalez in his concurrence in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 920–21 (Tex.1991) (Gonzalez, J., concurring). We note that *TransAmerican* is a discovery abuse case; however, the guidelines offered by Justice Gonzalez apply with equal force to rule 13 sanctions.[3] Among those offered by the justice that we find particularly applicable to this case are a consideration of:

1) the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

2) the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

3) the impact of the sanction on the offended party, including the offended person's need for compensation;

4) the relative magnitude of sanction necessary to achieve the goal or goals of the sanction; [and]

5) burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of ... other court costs.

It is clear that the trial court considered many of the proposed guidelines in making his determination on the amount of sanctions to be imposed against Hawkins. However, we find that the trial court must not base the amount of sanctions on the costs necessary for a will contest.

## POINTS OF ERROR

*Point of Error 1:*

■ Hawkins challenges the district court's jurisdiction over the probate proceedings, and he argues that without probate jurisdiction the district court had no authority to enter sanctions. He first argues that the district court could assume jurisdiction only over those *contested* matters transferred to it by the county court. However, he argues, the district court heard numerous probate matters that were filed originally with the district court and were not before the district court by transfer from the probate court.

The county court signed a transfer order transferring "the captioned matter" to the district court. The captioned matter is the Estate of William F. Volkmann, Deceased. The probate code permits transfer to the district court of any *contested* matter. TEX. PROB.CODE ANN. § 5(b) (Vernon Supp.1994). Thus, the order could only transfer those matters that are contested. Our reading of the order is that it did no more than transfer to the district court the contested aspects of the estate. At the time the order was signed there were two pending matters that were contested: the will and the temporary administration. Once the contested matter has been transferred to the district court, in this case, the will contest and the temporary administration contest, the district court is empowered to hear all matters incident to the estate. TEX.PROB.CODE ANN. § 5(e) (Vernon Supp.1994); *Novak v. Stevens*, 596 S.W.2d

---

**3.** We also note that Hawkins relies heavily on *TransAmerican* as support for his position against the severity of the sanctions.

848, 851 (Tex.1980). A matter incident to the estate includes,

> the probate of wills, the issuance of letters testamentary and of administration, and the determination of heirship, and also include[s], but [is] not limited to, all claims by or against an estate, all actions for trial of title to land and for the enforcement of liens thereon, all actions for trial of title to land and for the enforcement of lines thereon, all actions for trial of the right of property, all actions to construe wills, the interpretation and administration of testamentary trusts and the applying of constructive trusts, and generally all matters relating to the settlement, partition, and distribution of estates of deceased persons.

TEX.PROB.CODE ANN. § 5A(b) (Vernon Supp. 1994). An action is " 'incident to' an estate when the controlling issue is the settlement, partition, or distribution of an estate insofar as it does not apply to suits by or against a personal representative." *Palmer v. Coble Wall Trust Co.,* 851 S.W.2d 178, 192 (Tex. 1992). The term is given a broad interpretation. *Novak,* 596 S.W.2d at 851.

We note that Hawkins fails to identify any specific issues or orders the county court transferred to the district court that were not contested matters. It is Hawkins' burden to point out those specific rulings and errors of the trial court mandating a reversal. The record contains over 19 volumes of the transcript and contains in excess of 2500 pages. We decline to search through such a massive record to glean what orders Hawkins had in mind but failed to specify. *See* TEX.R.APP.P. 74(d); *Anheuser–Busch Cos. v. Summit Coffee Co.,* 858 S.W.2d 928, 942 (Tex. App.—Dallas 1993, writ denied); *Elder v. Bro,* 809 S.W.2d 799, 801 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

█ Hawkins next argues that the district court was without jurisdiction because he had requested Judge Sherrill, the presiding judge in the county court, to recuse himself. On December 19, 1990, Hawkins sought a recusal or disqualification on behalf of his client,

Snodgrass, of Judge Sherrill pursuant to Texas Rule of Civil Procedure 18b.

Rule 18a requires the motion to recuse to "set forth such facts as would be admissible in evidence provided that facts may be stated upon information and belief if the grounds of such belief are specifically stated." TEX. R.CIV.P. 18a(a). Rule 18b sets out the grounds for disqualification and recusal.

The presiding judge of the county court is Otis H. Lyckman. Judge Lyckman and his wife are interested parties in the will. Judge Lyckman recused himself from this case. The governor of Texas (William P. Clements, Jr.) appointed Charles Sherrill to preside over the case in county court. On December 17, 1990, Judge Sherrill appointed Lyckman and Awbrey L. Kothmann to serve as temporary administrators of the estate.[4]

█ Hawkins claimed, in his motion, that Judge Sherrill is not impartial, but has a personal bias or knowledge of the subject matter or a party. Hawkins contended that Lyckman, either personally or through his agents, discussed the case with Judge Sherrill before or after Judge Sherrill's appointment. Hawkins also argued that Lyckman recommended Judge Sherrill for the appointment and thus, there is a financial tie between Judge Sherrill and Lyckman. Hawkins' motion raises only the issue of recusal, not disqualification. Hawkins did not contend that he had learned of the basis for the recusal at a time that he could not comply with the ten-day requirement of rule 18a. The motion to recuse was filed December 19, 1990, after a hearing on the appointment of the temporary administrators held December 17, 1990. The motion to recuse must be filed at least ten days prior to the entry of the judgment or other order. TEX.R.CIV.P. 18a. The motion to recuse was not timely, and no excuse for Hawkins' inability to file it timely was offered; therefore, the judge was not required to rule on the motion or to refer it to the administrative judge for determination. *Johnson v. Smith,* 857 S.W.2d 612, 615 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding); *Watkins v. Pearson,* 795

---

4. Both temporary administrators were named by the testator to be the co-independent administra-

tors of the estate.

S.W.2d 257, 259 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Petitt v. Laware*, 715 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Hawkins did not renew his motion to recuse before any subsequent hearing. The motion was untimely. The trial court was therefore not placed under the mandatory provisions of rule 18a.

Hawkins discusses several cases that hold that the district court did not acquire jurisdiction over the cause. However, there was no order transferring the case from county court to district court in these cases. *See Stodder v. Evans*, 860 S.W.2d 651 (Tex. App.—Waco 1993, writ denied); *Crawford v. Williams*, 797 S.W.2d 184 (Tex.App.—Corpus Christi 1990, writ denied); *Bowen v. Hazel*, 723 S.W.2d 795 (Tex.App.—Texarkana 1987, no writ); *Thomas v. Tollon*, 609 S.W.2d 859 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Estate of Rosborough*, 567 S.W.2d 823 (Tex.Civ.App.—Texarkana 1978, writ dism'd). They do not apply to this case. Hawkins's first point of error is overruled.

*Point of Error 2:*

■ Hawkins contends that the trial court lost plenary power and therefore had no jurisdiction to enter the sanctions order. Hawkins argues that summary judgment, signed June 20, 1991, by the district court, contained a severance that made the summary judgment final. He argues that the trial court lost plenary power over this judgment thirty days after it was signed. Hawkins also argues that the district orally returned jurisdiction to the county court. The written summary judgment contains no language returning jurisdiction to the county court. The district court assigned cause number 4250–A to the severed claims of Snodgrass and cause number 4250–A became a final judgment. The district court retained jurisdiction and continued to hear matters concerning the estate, cause number 4250. Hawkins continued to file challenges to each subsequent action of the district court in cause number 4250. The district court still had jurisdiction over cause number 4250 and Hawkins submitted himself to the jurisdiction of that court. Point of error two is overruled.

*Point of Error 3:*

■ Hawkins complains that the sanctions order was based upon "papers which were not filed in the cause or court in which the sanctions were filed." He refers to three findings listed in the sanctions order. First, we note that Hawkins fails to argue his point. He makes a factual statement regarding the record followed by a citation to Texas Rule of Civil Procedure 13 (sanctions rule) and Texas Rule of Appellate Procedure 84 (damages for frivolous appeal). He makes no attempt to apply the cited rules to the facts of his case. A review of the cited rules themselves does not exhibit error. Further, Hawkins presents no argument or further reference to the second finding listed—a grievance he filed against opposing counsel (finding number 42). Hawkins has waived review of his complaints. *See Missouri Pacific R.R. Co. v. Lemon*, 861 S.W.2d 501, 528 (Tex.App.—Houston [14th Dist.] 1993, no writ). However, we will point out that the two findings he specified—that he gave notices of appeals of interlocutory orders (finding number 39) and that he attempted to obtain standing in this case for his client based on a proceeding in Tom Green County (finding number 46)—are based on papers filed in the district court. Hawkins contends that the appeal bonds referred to in finding number 39 were filed in this court. The bonds are filed in the district court and are part of that court's records. *See* Tex.R.App.P. 41(a)(1). The subsequent pleadings claiming standing were filed in the district court.

Point of error three is overruled.

*Point of Error 4:*

■ Hawkins contends that Judge Jordan had no judicial authority to enter the sanctions order because he retired as presiding judge and the appointment for him to serve as visiting judge was made before he retired. Hawkins also argues that any appointment that may have occurred does not extend to the severed aspect of the cause against his client, Snodgrass.

The court's jurisdiction to enter sanctions against Snodgrass is not an issue before this

court. Snodgrass' attempted appeal from the sanctions order was dismissed for want of jurisdiction due to the late filing of her cost bond. *See Hawkins & Snodgrass v. Estate of Volkmann, Deceased,* No. 04–93–00136–CV (Tex.App.—San Antonio, June 16, 1993, n.w.h.) (not reported). The sanctions order relating to Hawkins was not severed.

The first order appointing Judge V. Murray Jordan to sit as a retired judge is dated January 1, 1990. Hawkins argues that this order is invalid because Judge Jordan had not yet retired. A second order appointing Judge Jordan to sit as a retired judge is dated January 28, 1991, and the assignment period is for one month beginning February 1, 1991, and to continue thereafter as "necessary to complete the trial of any case or cases begun during this period, and to pass on motions for new trial and all other matters growing out of cases tried by the Judge herein assigned during this period." The judge was "[t]o hear all matters coming before the court." The same order was reissued monthly.

The first order signed by Judge Jordan as visiting judge was dated February 11, 1991. Thus, it appears that his actions were taken at a time after he was appointed.

 Hawkins relies on the case of *Ex parte Holland,* 807 S.W.2d 827 (Tex.App.—Dallas 1991, orig. proceeding), to support his argument that Judge Jordan had to be reassigned to preside over each separate probate matter in this case. The court in *Holland* had before it a family law matter involving the trial court's continuing jurisdiction under section 11.05(a) of the family code. *Id.* at 829. In that case, a retired judge was assigned to hear a modification of child support. The judge signed the modification order on April 24, 1990. In late August of that year, the mother brought a contempt proceeding before the same retired judge. Due solely to the peculiar nature of the court's continuing jurisdiction over family matters, the appeals court found that a new assignment was necessary because the plenary power of the trial judge under the original assignment had expired after the order modifying the support had become final. *Id.* at 829–30. In a probate case, an order of the

trial court becomes final and appealable if the order disposes of all issues and parties related to the order. *See* TEX.PROB.CODE ANN. § 5(f) (Vernon Supp.1994); *Huston v. Federal Deposit Ins. Corp.,* 800 S.W.2d 845, 848 (Tex.1990). It does not, however, conclude the trial court's jurisdiction. The court retains jurisdiction over the contested matter until the contested matter is resolved or returned to the county court. *See id.* § 5(b). In this case, the orders entered by the trial court do not conclude the will contest or the temporary administration. The plenary power of the court over the contested matter has not concluded. Judge Jordan did not have to be reassigned to hear the same contested matters after every order he signed. Further, each month the presiding judge of the administrative region reappointed Judge Jordan to hear matters arising in the 198th district court. "In the absence of a showing to the contrary, this court will presume that a retired district judge was properly assigned to preside over the trial." *Olivares v. State,* 693 S.W.2d 486, 489 (Tex.App.—San Antonio 1985, writ dism'd w.o.j.). Judge Jordan properly heard and assumed jurisdiction over the sanctions order.

Hawkins's fourth point of error is overruled.

*Point of Error 5:*

Hawkins argues that Judge Jordan was automatically disqualified from sitting pursuant to section 74.053 of the government code.

 Section 74.053 prohibits an assigned retired judge from hearing a case if a party timely files an objection to the assignment of the judge. TEX.GOV'T CODE ANN. § 74.053(b) (Vernon Supp.1994). An objection is timely if it is filed before the assigned judge presides over the first hearing or trial, including pretrial hearings. *Id.* § 74.053(c); *Lewis v. Leftwich,* 775 S.W.2d 848, 850 (Tex.App.—Dallas 1989, orig. proceeding).

 In this case, the first objection to Judge Jordan's assignment was made on July 11, 1991. However, Judge Jordan's first order as the retired judge assigned to this case was signed February 11, 1991. Hawkins's objection appears to be untimely.

However, Hawkins argues that because each order of the court hearing probate matters is appealable before the entire estate is closed, he may make his objection before the hearing on any order. Hawkins presents the same argument he presented for the reassignment of the judge in the previous point of error. While each probate order that completely disposes of the particular issue involved is considered final for purposes of appeal, *see* TEX.PROB.CODE.ANN. § 5(f) (Vernon Supp.1994); *Huston v. Federal Deposit Ins. Corp.*, 800 S.W.2d at 848, it does not conclude the entire probate proceeding. The court hearing probate matters does not lose its jurisdiction after the entry of each order. It does not lose jurisdiction until the estate is closed. TEX.PROB.CODE ANN. 2(e) (Vernon Supp.1994); *see Graham v. Graham*, 733 S.W.2d 374, 378 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.). Hawkins' objection to the assignment was not made until after Judge Jordan had heard and ruled on several matters involving Hawkins. Because the objection was not timely, the judge was not automatically disqualified.

Point of error five is overruled.

*Point of Error 6:*

■ Hawkins challenges Judge Jordan's order overruling his motion for recusal of himself. He argues that the judge being challenged cannot determine whether the motion was timely, but can only grant the recusal or refer the motion to the presiding judge. Judge Jordan did not refer the motions.

Hawkins lists ten objections to Judge Jordan's assignment.[5] None of the objections were made timely. Nine of the objections were filed after the first hearing held by the assigned judge and were filed either on the day a hearing was set or less than ten days before a hearing was set. The government code requires that an objection to an assigned retired judge must be made before the first hearing. TEX.GOV'T CODE ANN.

§ 74.053(c) (Vernon Supp.1994). Rule 18a of the procedure rules requires that a motion to recuse the judge must be filed at least ten days prior to any hearing. TEX.R.CIV.P. 18a(a). Hawkins did not seek a constitutional disqualification of Judge Jordan. Section 74.053, requiring a mandatory disqualification, was not activated by Hawkins' untimely objection. *See* TEX.GOV'T CODE ANN. § 74.053(c) (Vernon Supp.1994). Similarly, a rule 18a recusal or referral to the presiding judge was not activated by an untimely motion. *See* TEX.R.CIV.P. 18a(a); *Johnson v. Smith*, 857 S.W.2d 612, 615 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding); *Watkins v. Pearson*, 795 S.W.2d 257, 259 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Petitt v. Laware*, 715 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The tenth objection was filed more than ten days before any hearing. However, that objection contains no reference to either section 74.053 or to rule 18a. The motion contains none of the procedural requirements of rule 18a: the motion is not verified (*see* TEX.R.CIV.P. 18a(a)); it states no grounds for recusal (*see* TEX.R.CIV.P. 18a(a)); and it contains no notice that Hawkins expects to present the motion to the court three days after its filing (*see* TEX.R.CIV.P. 18a(b)). The document merely objects to the assignment of Judge Jordan. Thus, we find the "Objection to Assignment of Judge V. Murray Jordan as Judge to Hear the Contest of Ninth Application for Payment or Ratification of Payment of Claims or Expenses" was not brought pursuant to rule 18a. We interpret the motion as one requesting mandatory disqualification under section 74.053(b). The objection was filed well after Judge Jordan had assumed jurisdiction over the cause and had held his first hearing. The objection was untimely and did not require Judge Jordan's mandatory disqualification. *See* TEX.GOV'T CODE ANN. § 74.053(c) (Vernon Supp.1994).

---

5. Appellant filed objections on the following dates: July 11, 1991; August 12, 1991 (two objections); August 14, 1991; September 10, 1991 (two objections); October 14, 1991; October 25, 1991; December 9, 1991; December 9, 1991; February 6, 1992 (two objections); May 4, 1992; June 22, 1992; June 23, 1992 (two objections); August 4, 1992 (two objections); and one with an illegible file mark, but which contains a certificate of service of August 3, 1992 (we will give appellant the benefit of the doubt and assume that it was filed at the earliest possible time—the date he mailed it—which is August 3, 1992).

Hawkins waived his objection to Judge Jordan's sitting as the assigned judge. Point of error 6 is overruled.

*Point of Error 7:*

Hawkins challenges the sanctions order based on a lack of standing by the movants to the motion. Hawkins argues that the temporary administrators of the estate cannot seek sanctions in a will contest because they have no interest in a dispute over which will is to be admitted to probate. Thus, they could not request that Snodgrass' pleadings—which included a will contest—be stricken as sanctions.

As we have noted earlier, Snodgrass has not perfected an appeal of the sanctions order striking her pleadings. Hawkins has no standing to bring this point; the striking of Snodgrass' pleadings was not a sanction against Hawkins and does not injuriously affect him. *See Ticor Title Ins. Co. v. Lacy,* 803 S.W.2d 265, 266 (Tex.1991).

Point of error seven is overruled.

*Point of Error 8:*

■ Hawkins contends that the appointment of the temporary administrators of the estate is voidable. He argues that both the application for the appointment and the order of appointment refer to sections 131A and 132 of the probate code. He contends that these two sections are inconsistent, that the appointment cannot be made under both sections, and that such misrecital of the sections "*may* make the application invalid" and "*may* make the order invalid" (emphasis in original).

On November 19, 1990, Otis H. Lyckman and Awbrey L. Kothmann sought appointment as temporary administrators pending the contest to the will. On November 28, 1990, Hawkins, on behalf of his client, sought the appointment of First City, Texas–Midland, N.A. as temporary administrator. That same day, Hawkins also contested Lyckman and Kothmann's application. The trial court, on December 14, 1994, after a hearing on the objections, appointed Lyckman and Kothmann as temporary administrators. The clerk issued letters of temporary administration on December 17, 1990. Hawkins filed a request for a hearing on her contest on De-

cember 19, 1990. Hawkins argues that because no hearing was held on the contest the appointment of the temporary administrators is voidable.

The trial court was required to hold a hearing and rule on the contest by December 31, 1990. *See* Tex.Prob.Code Ann. § 131A(i) (Vernon Supp.1994). The court held a hearing at which it "heard the evidence in support and the *objections to the Application*" on December 12, 1990. Another hearing was held March 8, 1991, and on April 2, 1991, the trial court more specifically denied Hawkins's contest to the appointment of the temporary administrators.

■ Section 131A contains no provision for the effect of a tardy hearing and ruling, and Hawkins offers no argument or authorities for holding a tardy ruling invalid. Section 131A does provide that the temporary administrators shall continue to act during the pendency of a contest to the appointment. Tex.Prob.Code Ann. § 131A(i) (Vernon Supp.1994). Hawkins raised no complaint to the trial court that a hearing was not timely held until March 8, 1991, the date the hearing was held. The burden to prove the appointment of the temporary administrators was improper is on the party contesting the appointment. *Nelson v. Neal,* 787 S.W.2d 343, 346 (Tex.1990). Because Hawkins challenged the appointment, he bore the burden of proof, and therefore, bore the burden of timely obtaining a hearing. Hawkins made no complaint to the trial court concerning the hearing until the date the hearing was actually held.

Further, the purpose behind the appointment of a temporary administrator is to preserve the status quo of the estate until it could be delivered into the control of the permanent administrator. *Id.* The trial court eventually denied Hawkins's contest to the appointment and thus ratified the earlier appointment. Any error of the trial court in holding a delayed hearing was waived by Hawkins. Further, the tardy ruling did not cause Hawkins "such a denial of [his] rights ... as was reasonably calculated to cause and probably did cause rendition of an improper judgment," especially in light of the

challenge having been heard on December 12, 1994. *See* Tex.R.App.P. 81(b)(1).

Hawkins's eighth point of error is overruled.

*Point of Error 9:*

Hawkins argues that the temporary administrators had no power to seek sanctions because the county court did not authorize them to file the motion.

■ Section 133 provides that the temporary administrators shall exercise only those rights and powers specifically expressed in the order of appointment. TEX.PROB.CODE ANN. § 133 (Vernon Supp.1994). Acts of the temporary administrators that exceed the authorization are void. *Id.*

■ The order appointing the temporary administrators specifically gave them the power and duty "to manage and preserve decedent's estate until further orders of the court." The court limited their power "[t]o assert, pursue and collect all claims and other property to which the estate might be entitled and to utilize all legal means and legal process to do so, except that the Temporary Administrators shall not file any lawsuit *for this purpose* without the prior approval of the Court." Hawkins contends that this limitation on bringing suit without the court's prior approval invalidates the sanctions order. The temporary administrators were not required to seek prior approval to seek sanctions against Hawkins. The limitation in the order applies only to collection efforts. The temporary administrators were acting within their charged duty to preserve the estate. Defending the continued challenges to the actions of the temporary administrators in paying estate claims and performing their duties was depleting the estate. The actions the temporary administrators took were an effort to preserve the estate.

Point of error nine is overruled.

*Point of Error 10:*

Hawkins contends that after Snodgrass' will contest was severed out of cause number 4250 into number 4250–A, the trial court could not base its sanctions order on any actions relating to the will contest.

Hawkins, on behalf of his client, filed a contest to the probate of the will in cause number 4250. He next filed a contest to the appointment of the temporary administrators in number 4250. On June 20, 1991, the trial court severed Snodgrass' will contest out of number 4250 and assigned it number 4250–A. On June 3, 1992, the trial court severed the sanctions motion against Snodgrass, but not against Hawkins, out of number 4250 into number 4250–A. As we have pointed out earlier, Hawkins lacks standing to challenge any order concerning sanctions against Snodgrass.

Hawkins offers no authority for his contention that the will contest could not be the basis of the sanctions order.

■ We do not find that the trial court erred in imposing sanctions in cause number 4250. Hawkins was sanctioned for actions he took in number 4250—failing to make reasonable inquiry concerning the execution of the will; persistently challenging the will's validity without engaging in discovery to determine its validity; engaging in a course of conduct and trial strategy designed to confuse the issues, delay the proceedings, and prolong the dependent administration in order to procure a sizeable settlement; filing numerous contests, objections, pleadings, and other documents in a pattern of continued groundlessness, bad faith, and harassment; appealing interlocutory matters; repeatedly challenging the actions of the temporary administrators without reasonable cause, inquiry, or justification; repeatedly attacking the court, its rulings, and its jurisdiction, and disrupting routine hearings by continually rehashing and reasserting the issues of standing, jurisdiction, and other irrelevant matters; repeatedly attacking opposing counsel, including filing a groundless grievance; repeatedly demanding jury trials on applications to pay claims; filing applications to probate wills he knew had been revoked; and using another cause to create standing for his client when it was determined she had no standing.

All of these actions occurred in cause number 4250. Hawkins was not sanctioned for actions he took in number 4250–A. The act of severing the order against Snodgrass in

the will contest did not erase the earlier actions by Hawkins taken in number 4250. Hawkins cannot elude sanctions for his actions taken in number 4250. Sanctions were properly entered in number 4250. *See Cass v. Stephens,* 823 S.W.2d 731, 734 (Tex.App.—El Paso 1992, no writ) (sanctions so intertwined with causes in main case should not be severed into new cause).

Hawkins's tenth point of error is overruled.

*Points of Error 11 and 12:*

Hawkins argues that Snodgrass, acting as Trustee for the Walter G. Volkmann Irrevocable Trust, did not receive proper notice of the sanctions hearing. As has already been discussed, Hawkins may not raise issues for Snodgrass—she failed to perfect an appeal.

 Hawkins also contends that his notice was only as to the sanctions to be imposed against him acting as attorney for Snodgrass. He claims that the notice for sanctions to be imposed against him as attorney for the trust was insufficient and failed to give clear notice of the allegations. Again, Hawkins has failed to give record references to his complaint in violation of Texas Rule of Appellate Procedure 74(d).

The temporary administrators filed a motion, amended motion, and two supplements to the amended motion for sanctions. In these four motions, the temporary administrators identified Snodgrass and her attorney, Hawkins. The motions contain a certificate of service that they were sent to Hawkins. The trial court held a hearing on the motions on April 16, 1992, that was not concluded until June 23, 1992. Hawkins appeared at the hearing in his individual capacity and as attorney for Snodgrass in her individual capacity and as trustee. On May 27, 1992, during the time the hearing on sanctions was continuing, the temporary administrators filed a trial amendment in which they specified Snodgrass in her individual capacity and as trustee and specified Hawkins as her attorney in both capacities. Hawkins made no objection. On June 1, 1992, Hawkins filed his first motion in response to the sanctions motion. He argued

Snodgrass' capacity both individually and as trustee.

The amended and supplemental motions and the trial amendment give Hawkins fair and adequate notice. *See* TEX.R.CIV.P. 4, 7; *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex. 1982). Hawkins has claimed no surprise. *See* TEX.R.CIV.P. 63, 66; *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 940, 941 (Tex.1990).

Hawkins also claims the notice only informed him that sanctions under Texas Rule of Civil Procedure 215 were being sought. The *motions for sanctions* clearly stated that sanctions were sought pursuant to rules 13 and 215. The motions adequately notify Hawkins of who and what actions were sought to be sanctioned.

Hawkins's eleventh and twelfth points of error are overruled.

*Point of Error 13:*

In this point of error, Hawkins contends that the actions he took in the trial court are not sanctionable.

 A trial court has broad discretion in entering sanctions. The standard of review on appeal is whether the trial court abused its discretion in making the award. *Brantley v. Etter,* 677 S.W.2d 503, 504 (Tex. 1984); *Glass v. Glass,* 826 S.W.2d 683, 688 (Tex.App.—Texarkana 1992, writ denied). The test is whether the trial court acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Lawrence v. Kohl,* 853 S.W.2d 697, 699 (Tex.App.—Houston [1st Dist.] 1993, no writ). Thus, it is Hawkins' burden to establish an abuse of that discretion by showing "that the trial court's action was arbitrary or unreasonable in light of all the circumstances in the particular case." *Lawrence,* 853 S.W.2d at 699. Whether the imposition of sanctions is just depends on two factors: (1) the existence of a relationship between the offensive conduct and the sanctions imposed; and (2) the appropriateness of the sanctions; the punishment must fit the crime. *Trans-American Natural Gas Co. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991); *see Lawrence,*

853 S.W.2d at 699. We find the trial court had evidence before it that would support the court's actions. *See Braden v. Downey,* 811 S.W.2d 922, 929 (Tex.1991).

Hawkins's thirteenth point of error is overruled.

*Point of Error 15:*

■ In his final point of error, Hawkins complains that the trial court refused to allow him to present critical evidence. He names Richard W. Davis, Carolyn Kothmann, Valeria Volkmann, Judge Lyckman, and Larry Bale as witnesses whose testimony he was denied. Hawkins has not given any authority for this point and it is waived. *See* TEX. R.APP.P. 74(d); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983). Further, he has not shown error calculated to cause and probably causing the rendition of an improper judgment. Hawkins failed to make a bill of exceptions on three of these witnesses (Davis, Lyckman, and Bale), and therefore has not shown what their testimony would be. He has failed to show that Kothmann's and Volkmann's testimony was relevant to any issues before the trial court.

Hawkins' final point of error is overruled.

*Cross-point:*

■ The temporary administrators seek the imposition of sanctions against Hawkins for bringing a frivolous appeal pursuant to Texas Rule of Appellate Procedure 84. They contend that the appeal was brought for delay and without sufficient cause. They point to the lack of cited authority in many of Hawkins' points of error and the lack of merit in many of his claims, as well as his continued effort to relitigate Snodgrass' position and issues finally determined by trial court orders not involved in this appeal or by our judgment in cause numbers 04–91–00532–CV, 04–91–00619–CV, and 04–91–00380–CV. We do not agree with the position of the temporary administrators. Hawkins appeals a $147,660.19 judgment against himself. He is well within his rights to do so. The request to impose sanctions on appeal is denied.

We conclude that the trial court did not err in sanctioning Hawkins for the actions specified. But we remand for a new determination of the proper amount of sanctions to be paid by Hawkins which does not include the expenses ordinarily necessary to defend a will contest brought and litigated reasonably and in good faith. The judgment of the trial court is affirmed in all points except the amount of sanctions against Hawkins. The case is remanded for a review of the amount as guided by this opinion.