Stephanie S. MACKIE, Charles S.
Settle, Jr., and Katherine S.
Nelson, Appellants,

v.

William A. McKENZIE, Jay M. Wallace,
and McKenzie & Baer, Appellees.

No. 06–94–00005–CV.

Court of Appeals of Texas,
Texarkana.

June 1, 1995.

Rehearing Overruled July 6, 1995.

 

Bennett J. Roberts, III, Houston, for appellants.

Charles T. Frazier, Jr., Andrea M. Kuntzman, Cowles & Thompson, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Stephanie Mackie, Charles Settle, Jr., and Katherine Nelson appeal from a summary judgment rendered against them in this legal malpractice action. The question on appeal is whether the trial court erred in granting the defendants' motion because genuine issues of material fact exist to preclude summary judgment. We affirm the judgment.

## FACTS

This action arises out of probate proceedings involving the estate of Frank H. Kidd, Jr., M.D., who died in February 1988. Stephanie Mackie was Kidd's niece. Charles Settle, Jr. and Katherine Nelson are Mackie's children. Kidd's last will, executed in March 1984, was admitted to probate in March 1988. Ward Halla was the executor of the Kidd estate.

Before executing the 1984 will, Kidd had executed a will in 1980 that left $50,000 and some personal effects to Mackie and approximately $600,000 to her children. The 1984 will leaves an estimated $265,000 to Mackie, but only $10,000 plus some personal effects to each of her children.

Mackie claimed that Kidd executed the 1984 will under suspicious circumstances. Specifically, the Baylor University Medical Center Foundation paid an attorney to draft the 1984 will for Kidd. The 1984 will gives approximately 75% of Kidd's residual estate to the Foundation and 25% to Presbyterian Hospital of Dallas. Before execution of the will, Gordon Caswell, the fund-raising director for the Foundation, had talked to Kidd about Kidd's desire to leave part of his estate to various charities.

When Mackie learned of the Foundation's involvement in the execution of the 1984 will, she unsuccessfully attempted to reach a settlement with the Foundation and the hospital. In October 1988, Halla filed a declaratory judgment action to have certain *inter vivos* payments Kidd made to Mackie characterized as loans. The loan amounts would then be deducted from any bequest Mackie received under her uncle's 1984 will.

Mackie sought the counsel of William McKenzie, an attorney. The two discussed the declaratory judgment action and a possible will contest. McKenzie told Mackie he would need a retainer to study the matter, and said that, if he decided to represent her, he would handle the case on a contingent fee basis. Mackie gave McKenzie a $10,000 retainer. On March 17, 1989, McKenzie filed a pleading opposing probate of the 1984 will on the basis of the Foundation's undue influence on Kidd.[1] McKenzie filed on behalf of Mack-

---

**1.** Originally, Mackie had contested the will on

grounds of lack of testamentary capacity and

ie only, not on behalf of Settle or Nelson. When this omission was called to McKenzie's attention, he indicated he would file an amended pleading including the children, but never did. McKenzie turned over much of the responsibility for the will contest to an associate, Jay Wallace. McKenzie and Wallace never suggested that Settle and Nelson should seek other counsel.

In May 1990, Mackie asked McKenzie to write an opinion letter outlining her potential recovery in the will contest. He refused, so Mackie fired him. McKenzie filed a motion to withdraw on May 23, 1990, and sent a copy of the motion to Mackie with a letter informing her of her right to contest the withdrawal. She did not, and the trial court granted the motion to withdraw from the will contest on June 5, 1990. On June 6, 1990, Wallace sent a letter to Mackie's son, Charles Settle, informing him of a June 26 hearing on a motion for partial summary judgment filed by the executor and the Foundation. Wallace told Settle that any written response needed to be filed by June 19, 1990. Mackie did not obtain substitute counsel in time for the hearing, and the trial court granted the motion for summary judgment.

Mackie subsequently obtained another attorney and in August 1990 entered into a settlement agreement with Kidd's estate, the Foundation, and the hospital. Mackie agreed to drop her opposition to the 1984 will. In exchange, she would be discharged from any obligations and liabilities she might have to the executor, estate, Foundation, or hospital and would receive $140,000 in full settlement of all monetary proceeds she was entitled to under the 1984 will.

Mackie, Settle, and Nelson filed suit against McKenzie, Wallace, and McKenzie & Baer in June 1992, alleging negligence and false, misleading, and deceptive acts. The trial court granted the defendants' motion for summary judgment.

## DISCUSSION

The function of a summary judgment is the elimination of patently unmeritorious claims or untenable defenses. *Gulben-*

kian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). A party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). A defendant moving for summary judgment must establish as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of each theory pleaded by the plaintiff. *Gibbs,* 450 S.W.2d at 828.

We view the evidence in the light most favorable to the nonmovant, and all doubts as to the existence of a genuine issue of material fact are resolved in the nonmovant's favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). The trial court did not specify the ground on which it relied in granting summary judgment; therefore, the summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

McKenzie and Wallace asked for summary judgment on the ground that any legal malpractice was not a proximate cause of damages as a matter of law. Regardless of any damages Mackie or her children may have suffered due to the failure of the will contest, the attorneys' actions must have been the proximate or producing cause of those damages. *See* Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon 1987); *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 181 (Tex.1995); *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex.1989).

An attorney malpractice action in Texas is based on negligence and requires proof of four well-known elements: the existence of a duty, the breach of that duty, that the breach was a proximate cause of damages, and that the plaintiff was damaged. *Cosgrove,* 774 S.W.2d at 664. When a client sues his attorney on the ground that the latter caused him to lose his cause of action, the burden of proof is on the client to prove that his suit would have been successful but for the negligence of his attorney and to

undue influence, but she abandoned her challenge to Kidd's testamentary capacity.

show what amount would have been collectible had he recovered the judgment. *Jackson v. Urban, Coolidge, Pennington & Scott*, 516 S.W.2d 948, 949 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

■ An action grounded in the DTPA requires a showing that the defendants committed false, misleading, or deceptive acts that were a producing cause of actual damages to the plaintiffs. *See* TEX.BUS. & COM. CODE ANN. § 17.50(a); *Haynes & Boone*, 896 S.W.2d at 182. A producing cause is an efficient, exciting, or contributing cause. *Haynes & Boone*, 896 S.W.2d at 182. Establishing producing cause requires the same factual causation as proximate cause, but lacks the foreseeability element embraced by the proximate cause standard. *Dubow v. Dragon*, 746 S.W.2d 857, 860 (Tex.App.—Dallas 1988, no writ).

■ Mackie asserts that causation is a question of fact and is an improper subject for summary judgment. Proximate cause is usually a question of fact, and this is true in most legal malpractice cases as well. *See Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex.1989) (recognizing general rule that causation is fact question, but finding that causation in appellate legal malpractice case is question of law). Nonetheless, causation may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion. *Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99, 105 (Tex.1977). Summary judgment in legal malpractice and DTPA actions has been upheld as proper when the movants established that, as a matter of law, the causation element was missing. *See, e.g., Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 626 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Mathew v. McCoy*, 847 S.W.2d 397, 401 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Sipes v. Petry and Stewart*, 812 S.W.2d 428, 431 (Tex.App.—San Antonio 1991, no writ); *MND Drilling Corp. v. Lloyd*, 866 S.W.2d 29, 31 (Tex.App.—Houston [14th Dist.] 1987, no writ).

■ To succeed in a legal malpractice action, the plaintiff must prove "a suit within a suit" by showing that he would have prevailed in the underlying action but for his attorney's negligence. *See Jackson*, 516 S.W.2d at 949. Mackie asserts that McKenzie failed to establish that she and her children could not have prevailed in the will contest as a matter of law. She urges that whether the 1984 will was the result of undue influence exerted by the Baylor University Medical Center Foundation is a question of fact and not a proper subject for summary judgment.

■ Before a will may be set aside because of undue influence, a contestant must prove the existence and exertion of an influence that subverted or overpowered the mind of the testator at the time of execution of the instrument so that the testator executed an instrument he would not otherwise have executed but for such influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Not every influence exerted on a person is undue. *Id.* It is not undue unless the free agency of the testator was destroyed and the will produced expresses the wishes of the one exerting the influence. *Id.* One may request, importune, or entreat another to create a favorable dispositive instrument, but unless the importunities or entreaties are shown to be so excessive as to subvert the will of the maker, they will not taint the validity of the instrument. *Id.*

■ Establishing the existence of undue influence generally involves inquiry into factors such as the circumstances surrounding execution of the instrument; the relationship between the testator and the beneficiary and any others who might be expected recipients of the testator's bounty; the motive, character, and conduct of the persons benefited by the instrument; the participation by the beneficiary in the preparation or execution of the instrument; the words and acts of the parties; the interest in and opportunity for the exercise of undue influence; the physical and mental condition of the testator at the time of the will's execution, including the extent to which he was dependent upon and subject to the control of the beneficiary; and the improvidence of the transaction by reason of unjust, unreasonable, or unnatural disposition of the property. *Green v. Ear-*

*nest*, 840 S.W.2d 119, 122 (Tex.App.—El Paso 1992, writ denied). Circumstances that are as consistent with a will executed free from improper influence as they are with a will resulting from undue influence cannot be considered as evidence of undue influence. *Id.*

■ The summary judgment evidence establishes that Frank Kidd, Jr. obtained his medical degree from Baylor University School of Medicine in 1937. He had surgical privileges at the Baylor University Hospital and served as president of the hospital staff in 1967. During his lifetime, Kidd made a gift of his office building to the Baylor Medical Center and then rented office space from the medical center until his death.

Kidd was instrumental in founding Presbyterian Hospital of Dallas and served as chairman of the hospital steering committee. He established visiting surgical professorships at both the Baylor Medical Center and Presbyterian Hospital. In 1984, the year he executed his last will, Kidd published a book of his memoirs about the founding of Presbyterian Hospital.

Also included in the summary judgment evidence is testimony from Gordon Caswell denying that he recommended that Kidd leave 75% of his residual estate to the Foundation, but admitting that the two men discussed the tax benefits to Kidd's estate as a result of making charitable bequests, including a bequest to the Foundation. Other summary judgment evidence also shows that Kidd was interested in avoiding payment of estate taxes.

Excerpts from the deposition of Ann Stevenson, the attorney who drafted the will, reflect that she saw no evidence that Kidd was vulnerable to the suggestions or influence of other people or that he disagreed with any of the provisions in the will Stevenson prepared. Kidd participated in the drafting of his will and discussed the various bequests and the tax aspects of his will. Kidd did not make any statements or act in such a way as to cause Stevenson to believe that, in executing the will, he was doing something he did not wish to do. The evidence also showed that Stevenson first drafted a will for Kidd in February 1984, but Kidd then decided to make some minor revisions and executed another will in March 1984. Stevenson saw no indication that Kidd was being pressured by anyone to make either the February 1984 or March 1984 will.

The summary judgment evidence shows that from 1984 until his death Kidd socialized, gave speeches, and discussed financial matters with his accountant and investment company as well as with his attorney. There is no evidence that Kidd suffered from any physical or mental incapacity in 1984 or that he was dependent upon or subject to the control of the Foundation, although he was proud of his association with both Baylor and Presbyterian Hospital. His maid stated that on several occasions in late 1983 and early 1984 Kidd mentioned to her that he wanted to give a lot of money to Baylor University Medical Center Foundation and to the Presbyterian Hospital. Other summary judgment evidence illustrates that other people also knew of Kidd's inclination to give money to charity.

In disposing of his estate, Kidd made provision for his relatives, including Mackie and her children, his maid, other individuals, and numerous charities. He was involved in and dedicated to the Presbyterian Church, the Rotary Club, and the Boy Scouts of America. All of these institutions received various sums of money under the 1984 will. Kidd then left 75% of his residual estate to the Baylor Medical Center Foundation and 25% to Presbyterian Hospital. To the extent the disposition of the estate could be considered unnatural in that the two institutions have been preferred over Kidd's relatives, that circumstance can be taken as evidence of undue influence only where all reasonable explanation for the devise is lacking. *Rothermel*, 369 S.W.2d at 924. The summary judgment evidence shows that charitable bequests were not foreign to Kidd's nature and, given Kidd's long association with both Baylor and the hospital, the disposition is understandable.

The circumstances on which Mackie and her children rely involve the Foundation referring Kidd to a particular attorney and paying for the preparation of Kidd's new will;

however, the Foundation paid for the will at Kidd's request. Halla, who was Kidd's accountant and later executor of the Kidd estate, asserted that Kidd was prone to giving to charities but was frugal with his own expenses, so that having the Foundation pay his legal expenses was consistent with his character.

Evidence as to any deceit or fraud on the part of the Foundation is lacking, and a will cannot be set aside on proof of facts which at most do no more than show an opportunity to exercise influence. *Rothermel*, 369 S.W.2d at 923. A solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing. *Id.*

The summary judgment evidence establishes as a matter of law that, regardless of the attorneys' conduct, Mackie and her children would not have succeeded in having the 1984 will set aside because of undue influence. The trial court properly entered summary judgment against Mackie, Nelson, and Settle.

In their motion for summary judgment, McKenzie and Wallace also asserted that Mackie suffered no damages as a matter of law.[2] In answer to interrogatories, Mackie explained that, under the 1984 will, she was to receive cash in the estimated amount of $265,000, including a deduction for advances paid to her by her uncle. After the probate court entered summary judgment against Mackie in the will contest, Mackie hired another attorney and settled her disputes with the executor, the Foundation, and hospital. Under the terms of the settlement agreement, she received $140,000.

Mackie contends that there is evidence of damages because she received only $140,000, not the estimated $265,000 she was entitled to under the will. If McKenzie & Baer had successfully pursued Mackie's will contest and had the 1984 will been set aside and the 1980 will probated, Mackie's inheritance would have been reduced to $50,000 plus some personal items. She collected more under her settlement agreement then she would have received had she succeeded in her will contest. The trial court did not err in granting summary judgment on the ground that Mackie suffered no damages as a matter of law as a result of the failure of her will contest.

Mackie, Settle, and Nelson contend that the summary judgment improperly disposes of some of their DTPA claims because these claims were not addressed in the motion for summary judgment. Granting a motion for summary judgment on causes of action not addressed in the motion is reversible error. *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex.1993). In their original petition, Mackie, Settle, and Nelson alleged that the defendants had violated the Deceptive Trade Practices–Consumer Protection Act in three specific ways:

1. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have;

2. Taking advantage of another's lack of knowledge, ability, experience and capacity to a grossly unfair degree causing a gross disparity between the consideration paid and the value received;

3. Breach of an implied warranty of performance, that services will be performed in a good and workmanlike manner.

*See* TEX.BUS. & COM.CODE ANN. §§ 17.45(5), 17.50(a) (Vernon 1987), § 17.46(b)(5) (Vernon Supp.1995).

In their motion for summary judgment, the defendants expressly addressed the implied warranty claim and argued that there was no such cause of action when professional legal services were at issue. Mackie does not challenge the defendants' right to sum-

---

**2.** The motion for summary judgment did not address the issue of any damages that Nelson and Settle may have suffered. A summary judgment must stand or fall on the grounds expressly presented in the motion for summary judgment. TEX.R.CIV.P. 166a(c); *McConnell v. Southside Sch.* *Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Moreover, there is summary judgment evidence that Kidd left approximately $600,000 to Nelson and Settle under his 1980 will, but their inheritance under the 1984 will was less.

mary judgment on the implied warranty claim, but contends that the trial court erred by granting summary judgment on the other two alleged violations of the DTPA that were not expressly addressed in the motion for summary judgment.

However, the thrust of the motion for summary judgment was that no act or omission by the firm caused any damages to each of the appellants. As previously discussed, the law firm asserted in its motion for summary judgment and reply to the plaintiffs' response to the motion for summary judgment that the malpractice claims must fail because there was no proximate cause and supported this assertion with summary judgment proof.

Although the motion for summary judgment does not expressly mention two of the plaintiffs' allegations of false, misleading, or deceptive acts, the motion establishes as a matter of law that, regardless of the attorneys' conduct, the causation element linking the attorneys' actions to the plaintiffs' alleged damages is missing.

Mackie, Settle, and Nelson also have other contentions regarding whether McKenzie and Wallace were negligent in the manner in which they withdrew from the probate proceedings and whether the McKenzie & Baer law firm ever represented Nelson. Addressing these contentions is unnecessary because sufficient grounds otherwise exist to support the summary judgment.

The summary judgment is affirmed.