In re ESTATE OF Estha Cartwright DAVIS a/k/a Estha H. Davis, Deceased Roscoe Cartwright, Janet D. Delape, Wade Cartwright, and Barbara Beagle, Appellants,

v.

Robert B. COOK, Schreiner College, First United Methodist Church of Kerrville, Hill Country Youth Ranch, and The Attorney General of the State of Texas, Appellees.

No. 04–98–00950–CV.

Court of Appeals of Texas, San Antonio.

Nov. 10, 1999.

Randall B. Richards, The Law Offices of Randall B. Richards, Boerne, for Appellant.

John E. Bakke, III, The Law Offices of John E. Bakke, III, San Antonio, David L. Jackson, S. Preston Douglass, Jr., Wallace, Jackson, Machann, Williams & Douglass, PC, Kerrville, Robert B. Cook, Jr., Dallas, Susan K. Staricka, Meredith Parenti, Austin, Robert L. Kelly, Stephen R. Turkett, Law Offices of Robert Kelly, P.C., Kerrville, Theodore F. Schiwetz, Jr., Law Office of Theodore F. Schiwetz, Jr., Kerrville, for Appellee.

Sitting: CATHERINE STONE, Justice PAUL W. GREEN, Justice SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

This summary judgment appeal arises from a will contest surrounding the disposition of Estha Cartwright Davis' estate, worth close to three million dollars. In multiple issues, the will contestants bring three general complaints on appeal: a) propriety of the no-evidence summary judgment; b) award of attorney's fees; and c) order of sanctions.

### FACTUAL AND PROCEDURAL BACKGROUND

At the age of ninety-nine, Estha Davis (hereinafter "Estha") executed the will at issue in 1995. The will provisions made the following distributions: (1) $1,000,000 to Ruth Cook ("Ruth"); (2) $100,000 to Robert B. Cook ("Cook"); (3) $25,000 to Hill Country Youth Ranch; (4) $75,000 to First United Methodist Church ("First Methodist"); (5) $2,000 to Anita Grona, Estha's long-time housekeeper; and (6) the residuary estate of nearly $2,000,000 to Schreiner College ("Schreiner"). Seven months later, Estha executed a codicil which allocated 2,400 shares of Brown Stock (a family shoe business in Kerrville) to Ruth Cook and a promissory note to Robert B. Cook.

Will beneficiary Ruth Cook married Estha's only child L.T., who died in 1945, three years after the marriage. Despite Ruth's later re-marriage, she remained in contact with Estha, visiting her several times a year. Beneficiary Robert Cook was one of Ruth's three children from the second marriage. Cook also maintained contact with Estha, visiting her about once a year during the last ten years of her life. Estha named Cook as the administrator in her will. Estha's deceased son L.T. attended Schreiner College, one of the charitable beneficiaries.

Estha died in Kerrville, Texas, on July 10, 1997. Challenging the probate of Estha's will on the grounds of undue influence, Estha's nieces and nephews ("contestants") filed a will contest on September 4, 1997. Cook soon filed a no-evidence summary judgment alleging that he defended the will and codicil in good-faith and no evidence of undue influence existed. Additionally, the charitable beneficiaries (Schreiner and First Methodist) moved for summary judgment on the same grounds. The Attorney General intervened in the suit on February 23, 1998, pursuant to Section 123.002 of the Texas Property Code, which provides that the Attorney General is a proper party and may intervene in proceedings involving a charitable trust. TEX. PROP.CODE ANN. § 123.002 (Vernon 1995). The Attorney General later filed a no-evidence motion for summary judgment against the contestants. Following the grant of several continuances to allow the contestants adequate time for discovery, the trial court conducted a sum-

mary judgment hearing on October 9, 1998. Finding no evidence of undue influence, the court entered an order on October 20,1998, granting summary judgment in favor of the will beneficiaries and ruling that the beneficiaries recover their necessary expenses and reasonable attorney's fees out of the estate. On November 4th and 13th 1998, respectively, the Attorney General and the charitable beneficiaries filed motions for sanctions arguing that the contestants brought the will contest in bad faith for the purpose of harassment. Despite the contestants' challenge to the trial court's jurisdiction, on December 29, 1998, the court granted the motions and entered an order modifying the original summary judgment to reflect an order of sanctions.

## SUMMARY JUDGMENT

### 1. Standard of Review

Turning to the first issue on appeal, we examine the propriety of the no-evidence summary judgment granted in favor of the will beneficiaries. A no-evidence summary judgment is essentially a pre-trial directed verdict. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Moore*, 981 S.W.2d at 269. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere

surmise or suspicion" of a fact. *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

■ At the outset, the contestants allege that a no-evidence summary judgment under TEX.R.CIV. P. 166a(i) is improper in the context of a will contest because of the fact-intensive inquiry involved. However, numerous cases exist where courts have utilized directed verdicts, summary judgments, and motions for j.n.o.v. in the context of will contests.[1] We recognize that neither the language nor the instructive commentary of Rule 166a(i) limits the type of case to which the rule applies.

■ The contestants also urge that the beneficiaries failed to bring forth evidence in support of their no-evidence motions. However, the contestants misconstrue the burden of proof set forth in Rule 166a(i). The rule requires only that the summary judgment motion state the elements of which no evidence exists. TEX.R.CIV.P. 166a(i). Here, the beneficiaries complied with the requirements of the rule by listing the elements of which contestants failed to show undue influence.

### 2. Undue Influence

■ *Rothermel v. Duncan*, 369 S.W.2d 917, 919 (Tex.1963), the seminal Texas will contest case, established a three-part test to determine whether undue influence exists in will executions. To prevail on a claim of undue influence, a will contestant must establish: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the

---

1. *See Green v. Earnest,* 840 S.W.2d 119 (Tex. App.-El Paso 1992, writ denied)(affirming summary judgment granted against contestant who brought claims of undue influence); *but see In Re Estate of Thompson,* 873 S.W.2d 113 (Tex.App.-Tyler 1994, no writ)(overturn-

ing summary judgment upon a finding that a fact issue existed on the testator's capacity); *Lisby v. Estate of Richardson,* 623 S.W.2d 448, 449 (Tex.App.-Texarkana 1981, no writ)(overturning directed verdict in will contest).

testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. *Id.* at 922. The burden of proving undue influence is upon the party contesting its execution. *Id.* It is necessary for the contestant to introduce some tangible and satisfactory proof of the existence of **each of the above stated elements** of undue influence. *Id.* (emphasis added). Further, it cannot be said that every influence exerted by one person on the will of another is undue, for the influence is not undue unless the free agency of the testator was destroyed and a testament produced that expresses the will of the one exerting the influence. *Id.*

▇▇▇ Undue influence may be shown by direct or circumstantial evidence, but will usually be established by the latter. *Green,* 840 S.W.2d at 121. When circumstantial evidence is relied upon, the circumstances must be so strong and convincing and of such probative force as to lead a well-guarded mind to a reasonable conclusion not only that undue influence was exercised, but that it controlled the will power of the testator at the precise time the will was executed. *Id.* Circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence. *Mackie v. McKenzie,* 900 S.W.2d 445, 450 (Tex.App.-Texarkana 1995, writ denied); *Garza v. Garza,* 390 S.W.2d 45, 47 (Tex.Civ.App.-San Antonio1965, writ ref'd n.r.e.). This is so because a solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing. *Garza,* 390 S.W.2d at 47.

## A. Existence & Exertion of an Influence

▇▇▇ Addressing the first prong of *Rothermel,* contestants allege that Cook and Schreiner were actively involved in the planning and preparation of Estha's will. Contestants argue that an inference of undue influence exists because there were no significant inter vivos gifts to family members prior to these beneficiaries' contact with Estha. Specifically, contestants point out that immediately after Estha's transmittal of tax information to Cook, who is also a lawyer, Estha gave large cash gifts to Cook's family up until the execution of the will. Although Ruth is not named as a party in the suit, contestants point to Ruth's presence and gifts of a bible and wheelchair to Estha from Ruth and Cook shortly before the execution of the will and codicil as evidence of some influence. As to Schreiner, contestants allege that the visits from the college development officer beginning in 1994 constituted an undue influence over Estha who was 98 years old at the time, lonely, isolated, and plagued with physical infirmities. *See Green,* 840 S.W.2d at 122 (recognizing that factors such as physical and mental condition of the maker of the instrument at the time of its execution, including age, any weakness or infirmity are probative evidence of undue influence); *but see Garza,* 390 S.W.2d at 47 (acknowledging that in the absence of facts showing a weak mind, no evidence existed that the seventy-seven year old testator succumbed to undue influence). Contestants allege that Estha's bequest of nearly $2,000,000 (the amount in the residuary estate) was an effort to placate Schreiner from soliciting donations from her.

▇▇▇ Conversely, the beneficiaries urge, and we agree, that the evidence offered by contestants shows merely an opportunity to exert an improper influence and nothing more. *Rothermel,* 369 S.W.2d at 922 (noting that the exertion of undue influence may not be inferred by the opportunity to exert influence). The contestants failed to offer specific facts of how Cook unduly influenced Estha. As to the solicitations from Schreiner, it is not improper for charitable organizations to offer estate planning advice, including plans for chari-

table donations. *See Mackie*, 900 S.W.2d at 450 (finding no evidence of undue influence where the fund-raising director for a charitable foundation met with the testator and discussed estate tax consequences of charitable donation). In *Mackie*, the charity secured an estate and gift tax attorney for the testator to help draft the will in issue, yet the court still declined to find such involvement improper. *Id.* In any event, whatever influence Schreiner exerted is equally consistent with evidence that negates any influence. *See Green*, 840 S.W.2d at 121 (holding that equally consistent circumstances of influence cannot be considered as evidence of undue influence).

## B. Overpowering the Testatrix's Mind

■■■ The second element of *Rothermel* requires a showing that the improper influence overpowered the testator's mind. *Rothermel*, 369 S.W.2d at 922. In the instant case, contestants contend that after the beneficiaries' contact with Estha, she changed the provisions in her prior will to reflect the current dispositions. Contestants urge that a jury could infer that, prior to the execution of the will, Schreiner made pleas to Estha which involved flattery, appeals to patriotism and self-worth, glorification of the memory of her deceased son, and the allure of membership in the Schreiner Oaks Society, an honorary organization for substantial Schreiner contributors, all of which overpowered Estha's mind.

Despite these suggested inferences, the beneficiaries offer no evidence that any alleged influence subverted or overpowered Estha's mind **at the time of the will's execution**. *Rothermel*, 369 S.W.2d at 922 (emphasis added). Even in cases exhibiting fairly egregious facts, courts have declined to find undue influence. *See Guthrie v. Suiter*, 934 S.W.2d 820, 823 (Tex.App.-Houston [1st Dist.] 1996, no writ)(finding no evidence of undue influence by brother and primary business advisor despite testatrix's inability to care for

herself and labotomy forty years prior to will execution); *Green v. Earnest*, 840 S.W.2d 119, 123 (Tex.App.-El Paso 1992, writ denied)(holding that despite testator's death caused by the beneficiary shooting the testator a little more than a month after the third will's execution, no evidence of undue influence existed at the time of the will's execution).

## C. No Execution "But For" the Influence

■■■ The third element of *Rothermel* asks if there was "execution of a document which the [person] would not have made but for the alleged influence." *Cobb v. Justice*, 954 S.W.2d 162, 166 (Tex.App.-Waco 1997, writ denied). Establishment of this element is generally predicated upon an assessment of whether the testament provides for an unnatural disposition of the property. *In re Estate of Davis*, 920 S.W.2d 463, 467 (Tex.App.-Amarillo 1996, writ denied). In this respect, only where all reasonable explanation for the devise is lacking may the trier of facts consider the disposition as evidence of disorder or lapsed mentality. *Id.*

■■■ Contestants' evidence surrounds the impropriety of Estha giving family stock to non-family members. Contestants point to inferences that can be drawn from Estha singling out Cook from his other two brothers and the absence of gifts to long-time friends in favor of the charities as more than a scintilla of evidence of undue influence.

In spite of these assertions, excluding collateral heirs in favor of charities is not unnatural. *See Naihaus v. Feigon*, 244 S.W.2d 325 (Tex.Civ.App.-Galveston 1951, writ ref'd n.r.e.) (upholding testatrix's will disposition which left bulk of estate to two synagogues and rabbi to the exclusion of surviving nieces and nephews); *In Re Caruthers' Estate*, 151 S.W.2d 946, 948 (Tex. Civ.App.-Beaumont 1941, writ dism'd) (recognizing that Texas public policy favors charitable gifts). Further, there is a direct connection between Estha and each

of the beneficiaries, thus providing a reasonable explanation for the devises. *See In Re Estate of Davis*, 920 S.W.2d at 467.

The contestants rely a great deal upon inferences rather than direct or circumstantial evidence to support a finding of undue influence. We hold that such inferences cannot withstand the three-prong test set forth in *Rothermel* and affirm the trial court's summary judgment in favor of the will beneficiaries. Thus, we overrule contestants' first, second, and third issues.

## ATTORNEY'S FEES

 In their second general complaint, contestants claim the trial court erred in granting attorney's fees on behalf of the beneficiaries. The court held a hearing on the issue of attorney's fees pursuant to section 243 of the Texas Probate Code which provides,

> [W]hen any person designated as executor in a will, or as administrator of the will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees in such proceedings. When any person designated as a devisee, legatee, or beneficiary in a will or alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he may be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX. PROB.CODE ANN. § 243 (Vernon Supp. 1999). Pursuant to section 243, the trial court awarded the beneficiaries attorney's fees for defending the will in good faith. Contestants urge that the trial court erred in awarding attorney's fees because they argue the beneficiaries failed to make a good faith offer of probate. However, contestants failed to produce specific evidence of undue influence or bad faith to overturn the trial court's award of attorney's fees. *See Harkins v. Crews*, 907 S.W.2d 51, 53 (Tex.App.-San Antonio 1995, writ denied)(holding that beneficiaries of an alleged will may recover reasonable expenses and attorney's fees when defending a will in good faith). In light of our holding that the trial court properly granted summary judgment, it follows that the trial court could properly award attorney's fees under section 243.

Contestants further claim that the trial court heard evidence of attorney's fees at the summary judgment hearing in violation of TEX.R. CIV. P. 166a(c) which prohibits the receipt of oral testimony at the summary judgment hearing. This argument lacks merit. The trial court held two distinct hearings: a hearing on the summary judgment on October 9 and a Probate Code hearing on October 19. No violation of TEX.R.CIV. P. 166a(c) occurred. We overrule contestants' fourth and fifth issues.

## SANCTIONS

### 1. Rule 329b(g)

In their final issue on appeal, contestants allege the trial court's plenary power expired before the sanctions order issued. We consider this jurisdictional challenge in terms of whether the beneficiaries' filing of a motion for sanctions within the period of the court's plenary power operated to assail the judgment and thus extend the court's plenary power under TEX.R.CIV.P 329b(g).

 Without filing certain motions, the trial court's plenary power to act in a case expires thirty days after the court signs the judgment. TEX.R.CIV.P. 329b(g). Rule 329b(g) provides in part,

> A motion to modify, correct, or reform a judgment (as distinguished from motion

to correct the record of a judgment under Rule 316), if filed, shall be filed and determined within the time prescribed by this rule for a motion for new trial and shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial.

Courts have construed Rule 329b(g) to mean that if the relief requested in a post-judgment motion results in a change in the judgment, the trial court's plenary power to act extends beyond thirty days. *Landmark American Ins. Co. v. Pulse Ambulance Serv. Inc.*, 813 S.W.2d 497 (Tex. 1991); *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex.1988); *Ramirez v. Williams Bros. Const. Co.*, 870 S.W.2d 551, 552 (Tex. App.-Houston [1st Dist.] 1993, no writ). We acknowledge that a trial court cannot issue an order of sanctions after its plenary power expires. *Scott & White Memorial Hosp. v. Schexnider*, 940 S.W.2d 594, 596 n. 2 (Tex.1996). However, where a party timely files a motion for sanctions which assails the trial court's judgment and results in a modification of the judgment, the jurisdictional extension within Rule 329b(g) applies. *See Lane Bank Equip. Co. v. Smith Southern Equipment, Inc.*, 981 S.W.2d 302, 303 (Tex.App.-Houston [1st Dist.] 1998, pet. granted) (holding that timely filed motion for sanctions which requested an award of over $40,000 in attorney's fees requested a substantial change in the judgment); *Kirschberg v. Lowe*, 974 S.W.2d 844, 847–48 (Tex.App.-San Antonio 1998, no pet. h.)(holding that appellate timetable is extended by filing postjudgment motion or other instrument that is (1) timely filed and (2) assails the trial court's judgment); *Home Owners Funding Corp. of Amer. v. Scheppler*, 815 S.W.2d 884, 886–87 (Tex.App.-Corpus Christi 1991, no writ)(holding that a timely filed motion for sanctions which specifically requested modification of judgment extended trial court's plenary power); *Cf. Gomez v. Texas Dep't of Criminal Justice*, 896 S.W.2d 176, 176–77 (Tex.1995)(timely filed bill of review which assailed trial court's judgment extended appellate timetable from thirty days to ninety days).

▄▄▄ Here, the trial court entered an order granting the no-evidence summary judgment in favor of the beneficiaries on October 20, 1998. Contestants claim that the trial court's plenary jurisdiction expired thirty days after this entry, on November 20, 1998. The Attorney General and the charitable beneficiaries filed motions for sanctions on November 4 and 13, 1998; however, the trial court did not enter the order granting sanctions and modifying the summary judgment until December 29, 1998. The court imposed over $88,000 in sanctions against the contestants, finding that the will contest was groundless and brought for harassment purposes. The trial court also found in the December 29th order modifying the summary judgment, that the filing of the motion for sanctions operated as a motion to modify the original judgment and extended the court's plenary power under TEX. R.CIV.P. 329b(g).

Consistent with case law interpretation of Rule 329b(g), we hold that the beneficiaries timely filed their motion for sanctions, and that the sanctions motion implicitly requested a substantive change in the judgment. Specifically, the December 29th order modified an original take-nothing summary judgment and imposed more than $80,000 in sanctions against the contestants. Following the analysis used in *Scott, Lane Bank, Kirschberg,* and *Scheppler,* we hold that Rule 329b(g) contemplates a timely filed motion for sanctions that necessarily results in a change in the judgment.

**2. Rule 13**

▄▄▄ Although we hold that the trial court retained plenary power to impose sanctions, a review of the record reveals that the evidence is legally and factually insufficient to support the award. Applicable to both attorneys and parties, Rule 13 provides in part,

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

TEX.R.CIV. P. 13. The imposition of Rule 13 sanctions involves the satisfaction of a two-part test. First, the party moving for sanctions must demonstrate that the opposing party's filings are groundless, and second, it must be shown that the pleadings were filed either in bad faith or for the purposes of harassment. *GTE Communications v. Tanner*, 856 S.W.2d 725, 731 (Tex.1993); *Woodward v. Jaster*, 933 S.W.2d 777, 783 (Tex.App.-Austin 1996, no writ). Rule 13 defines "groundless" as having no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. When determining whether sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex.App.-Dallas 1993, no writ). The imposition of Rule 13 sanctions is within the sound discretion of the trial court, and we set aside that discretion only upon a clear showing of abuse of discretion. *GTE Communications*, 856 S.W.2d at 730. A trial court abuses its discretion in imposing sanctions only if it bases the order on an erroneous view of the law or on a clearly erroneous assessment of the evidence. The test is whether the trial court acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

 This court in *Hawkins v. Estate of Volkmann*, 898 S.W.2d 334, 336 (Tex.App.-San Antonio 1994, writ denied), examined the imposition of Rule 13 sanctions in the context of a will contest. In *Hawkins*, we noted that, "a party has the right to contest a will and be heard on the merits. Litigation, conducted in good faith (as well as in bad faith), is expensive. Just because one party is causing another party to expend money in defending itself is not objectionable." *Id.* at 336. Rather, we must look to see whether the conduct was in fact groundless and conducted for the purposes of bad faith or harassment. TEX. R.CIV. P. 13. In reviewing the imposition of sanctions, we ordinarily look to the particulars of good cause set out in the sanctions order. *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex.App.-Dallas 1994, writ denied).

As set forth in the modified summary judgment, the trial court considered the following particulars as grounds for good cause in imposing sanctions against the contestants: [2] a) the contestants' feeling that secrecy surrounded the creation of the will; b) the unfriendliness shown to contestant Roscoe Cartwright's wife at Estha's 100th birthday party; and c) the unnatural dispositions made in Estha's will. The trial court found these factors insufficient to support a will contest and further found that the contestants filed the contest for the purpose of harassment. However, an examination of the record indicates that contestants had other grounds for bringing the will contest; namely, their inability to access the will until after it was filed in the probate court, the sporadic visits by Cook and Ruth compared to the disparity of the disposition, and the uninvited solicitations from Schreiner.

 Unlike the facts in *Hawkins*, where we upheld an order of sanctions against the attorney and will contestant for repeated challenges to the administrator's actions, repetitious pleadings, contests and objections, continuous jury trial filings,

---

**2.** Although the trial court found that the contestants filed groundless pleadings for harassment purposes, the court did not issue sanctions against contestants' attorneys.

and several applications to probate the will, the contestants in the instant case engaged in no such dilatory activity to justify the sanctions award under Rule 13. *See Hawkins*, 898 S.W.2d at 338. Further, even if we assume that the contestants' pleadings were groundless, there is no showing of record to indicate bad faith or harassment. While Rule 13 fails to define "bad faith" and "harassment," case law interpretation holds that to prevail on a claim of "bad faith" under the rule, a party must demonstrate that the claim was motivated by a malicious or discriminatory purpose. *Stites v. Gillum*, 872 S.W.2d 786, 794 (Tex.App.-Fort Worth 1994, writ denied); *Central Texas Hardware v. First City*, 810 S.W.2d 234, 237 (Tex.App.-Houston [14th Dist.] 1991, writ denied). No evidence of ill will or malicious purpose exists in the record. *See Laub v. Pesikoff*, 979 S.W.2d 686, 693 (Tex.App.-Houston [1st Dist] 1998, pet. denied)(recognizing that Rule 13 is a tool available to trial courts in those egregious situations where the worst of the bar uses our system for ill motive without regard to reason and the guiding principles of law). Accordingly, we hold that the trial court abused its discretion in imposing sanctions against the contestants. We reverse that portion of the trial court's order and render judgment that the beneficiaries take-nothing on the issue of sanctions.

The judgment of the trial court granting summary judgment in favor of the beneficiaries and awarding attorney's fees to the beneficiaries is affirmed; that portion of the judgment assessing sanctions against the contestants is reversed, and judgment is rendered that the beneficiaries take nothing in their claim for sanctions.