COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
  
 IN THE MATTER OF THE ESTATE
 OF NOEMI RUTH SIDRANSKY A/K/A
 NOEMI WIENER SIDRANSKY,
 DECEASED.
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00361-CV
  
                          Appeal from
  
 Probate Court No. 2
  
 of El Paso County,
 Texas
  
 (TC # 2007-P00977)
 
 
 
 
  
 
 
  
  
 
 
  
 
 


                                                                  O
P I N I O N

 

This
is a will contest which Appellee Graciela Barajas characterizes as an
opportunity to ensure that a mother’s dying wish is recognized in life.  Noemi Sidransky was born in 1928 and married
at the age of sixteen.  She bore twelve
children during the marriage, one of whom is disabled.  This daughter, Miriam, suffers from a mental
disability which requires specialized care and attention.  In 1993, Sidransky’s husband passed
away.  Sidransky cared for Miriam by
herself but sometime thereafter, another daughter--Graciela Barajas--became the
primary caretaker for both Miriam and Sidransky.  Sidransky died on August 25, 2007 at
seventy-nine years of age.  She left a
trust and will executed in 1999 and amended in 2003, both of which named Graciela
as executor of her estate.  The record
reveals that Sidransky expressed to her attorney that she wished to provide at
least 50 percent of her estate to Miriam through the trust.  The testimony of the attorney, David Grady, is
critical to our review.

In
December 1999, Sidransky, Graciela, and Miriam headed to Albuquerque for a
medical appointment.  Graciela arranged
for Sidransky to meet with David Grady, a New Mexico attorney experienced in
estate planning and elder care.  Grady
met the family at their hotel and asked to speak with Sidransky alone.  They pair talked for over an hour.  There apparently was a second consultation at
Grady’s law office.  In his deposition,
Grady offered his opinion as to Sidransky’s state of mind:

Q:  During that exchange of information when you
were being deluged with information, did you have any impression as to whether
there was being any pressure exerted by Mrs. Barajas in terms of the content
and the nature of the will or the trust that you were to prepare?

 

A:  I was satisfied that there was not.

 

Q:  That there was not any undue influence or
pressure?

 

A:  I was satisfied that there was not.

 

Grady also
offered the following opinions. 
Sidransky was making her own decisions and seemed strong willed.  She understood the purpose of the meeting,
she knew about her property, and she recognized who her children were.  Her primary goal was to ensure that Miriam
was protected since she could not care for herself.  She wanted half of her estate and her life
insurance benefits bequeathed to Miriam. 
Sidransky preferred that Graciela handle the estate because Sidransky
knew Graciela would take care of Miriam. 
Overall, Miriam was to receive 50  percent, Graciela would receive 20
percent, another daughter--Judith Jamui--and her children were to receive 26
percent.

            Sidransky also expressly excluded
certain children from the will.  She told
Grady that she believed some of the children had stolen property after her
husband passed away.  She explained that
there were “two camps,” one of which took property she believed was hers.  The other camp was supportive of her.  The will and trust both specified that
Sidransky intentionally omitted Eduardo Sidransky, Esther Ovadia, Saul Agustin
Sidransky, Jose Moises Sidransky, and Raquel Unell as beneficiaries and
referred to them as “disfavored children.” 
Moises and Raquel are the Appellants herein.  The 1999 will and trust were executed before
two impartial witnesses, both of whom signed an affidavit that Sidransky signed
of her own free will and without undue influence.

            Just a few weeks after she signed
the will, Sidransky underwent heart surgery in Albuquerque.  Moises and Raquel visited her, engaged a
notary public at the hospital, and obtained a signed power of attorney
appointing Moises as Sidransky’s attorney in fact.  Three days later, Sidransky asked Grady to
revoke the power of attorney and to draw papers appointing Graciela as her
attorney in fact.  

            In February 2001, Raquel sought a
temporary guardianship for her mother. 
In response, Sidransky sought a protective order against Raquel and
Moises.  Following an independent
psychiatric evaluation that determined Sidransky to be of sound mind and
capable of making her own decisions, the trial court declined to establish a
guardianship.

In
2003, Sidransky met with Grady again. 
She had traveled to New York and learned that her safety deposit boxes
had been emptied.  She believed that
another daughter--Sarah  Meier--had stolen the contents.  Sarah had been appointed first successor to
Graciela in the power of attorney. 
Sidransky asked Grady to prepare a new power of attorney appointing
Graciela as attorney in fact, with Judith named as first successor.  She also told Grady she wanted to redo her
will to exclude additional children. 
Moises and Raquel were specifically omitted.  Grady drafted the paperwork and explained the
contents.  He testified that although his
client was weaker, there had been no change in mental functioning since he
first met her in 1999.  The 2003 will was
executed before a disinterested witness. 
He, too, signed an affidavit that Sidransky was of sound mind and had
not been subjected to undue influence.  

As
we have noted, Sidransky died on August 25, 2007.  On October 4, Moises instituted a proceeding
to declare heirship of Sidransky’s estate and for an independent
administration.  Graciela then filed a
counter-petition to probate the 2003 will. 
Moises and Raquel opposed the application to probate the will claiming
that Sidransky lacked testamentary capacity and was unduly influenced by Graciela.  On March 14 and 15, 2009, Probate Court
Number Two conducted a bench trial to address only the issue of testamentary
capacity.  Thereafter, the court found
Sidransky had the requisite mental capacity to execute both the 1999 and the
2003 instruments.  Graciela then moved
for summary judgment on Appellants’ undue influence claim.  The trial court granted the motion and this
appeal follows. 

Standard
of Review

Graciela
filed a hybrid motion for summary judgment that combined a traditional motion
under Texas Rule of Civil Procedure 166a(c) with a no-evidence motion under
Rule l66a(i).  The purpose of summary
judgment is to eliminate patently unmeritorious claims and untenable defenses.  Accordingly, the movant has the burden of
proving that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law. Nixon v. Mr.
Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985).  In determining whether the movant has carried
this burden, all evidence favorable to the non-movant must be taken as true,
every reasonable inference must be indulged in favor of the non-movant, and any
doubts must be resolved in the non-movant’s favor.  Nixon,
690 S.W.2d at 548-49.

Traditional
summary judgments must stand on their own merits.  M.D.
Anderson Hospital and Tumor Institute v. Willrich, 28 S.W.3d 22, 23 (Tex.
2000).  Unless the summary judgment proof
conclusively establishes the movant’s cause of action or defense, the
non-movant is not required to respond to the motion at all.  Id.;
Rhone-Poulenc v. Steel, 997 S.W.2d
217, 222-23 (Tex. 1999).  Even in the
absence of any response to the motion, the non-movant may contend on appeal
that the movant’s proof was insufficient to support the entry of summary
judgment.  M.D. Anderson, 28 S.W.3d at 23.

In
reviewing a no-evidence summary judgment, the court must consider the evidence
in the light most favorable to the non-movant. 
King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 750-51 (Tex. 2003).  A
no-evidence summary judgment is essentially a pretrial directed verdict, and
the court applies the same legal sufficiency standard in reviewing a
no-evidence summary judgment as applies in reviewing a directed verdict.  Id. 

Accordingly,
the court reviews the evidence in the light most favorable to the non-movant,
disregarding all contrary evidence and inferences.  Id.  A no evidence point will be sustained when
(a) there is a complete absence of evidence of a vital fact, (b) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact
is no more than a mere scintilla, or (d) the evidence conclusively establishes
the opposite of the vital fact. Id.
Thus, a no-evidence summary judgment is improperly granted if the non-movant
brings forth more than a scintilla of probative evidence to raise a genuine
issue of material fact.  Id., citing
Tex.R.Civ.P. 166a(i).  “Less than a
scintilla of evidence exists when the evidence is so weak as to do no more than
create a mere surmise or suspicion of a fact.” 
[Internal quotations omitted].  King Ranch, 118 S.W.3d at 751.  By contrast, “[m]ore than a scintilla of
evidence exists when the evidence rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions.”  [Internal quotations omitted].  Id.,
citing Merrell Dow Pharms. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). 

UNDUE INFLUENCE

 

            In part, Graciela moved for summary
judgment on the ground that there is no evidence that Sidransky’s will was
executed as a result of undue influence.[1]  To set aside a will because of undue
influence, the contestant must prove the following three elements: 

(1) the existence
and exertion of an influence;

 

(2) the effective
operation of that influence so as to subvert or overpower the testator’s mind
at the time of the execution of the testament; and 

 

(3) the execution of
a testament which the maker would not have executed but for such influence. 

 

Rothermel v. Duncan, 369 S.W.2d 917, 922
(Tex. 1963).  Accordingly, the party
claiming undue influence must introduce some tangible and satisfactory proof of
the existence of each of these elements.  Scott v.
Townsend, 106 Tex. 322, 166 S.W. 1138 (Tex. 1914).  Evidence concerning one element is insufficient
because each element is necessary to establish a claim of undue influence.  See
Rothermel, 369 S.W.2d at 923.

Not
every influence exerted on a person is undue. 
Id. 
In fact, an influence is not “undue” unless it destroys the free agency
of the testatrix and the will produced expresses the wishes of the one exerting
the influence.  Id.  “One may request, importune, or entreat another
to create a favorable dispositive instrument, but unless the importunities or
entreaties are shown to be so excessive as to subvert the will of the maker,
they will not taint the validity of the instrument.”  Guthrie
v. Suiter, 934 S.W.2d 820, 831 (Tex.App.--Houston [1st. Dist.] 1996, no
writ), citing Rothermel, 369 S.W.2d
at 922.

Establishing
the existence of undue influence generally involves inquiry into factors such
as:

1.  the circumstances surrounding execution of the
instrument;

 

2.  the relationship between the testator and the
beneficiary and any others who might be expected recipients of the testator’s
bounty;

 

3.  the motive, character, and conduct of the
persons benefitted by the instrument;

 

4.  the participation by the beneficiary in the
preparation or execution of the instrument;

 

5.  the words and acts of the parties;

 

6.  the interest in and opportunity for the
exercise of undue influence;

 

7.  the physical and mental condition of the
testator at the time of the will’s execution, including the extent to which she
was dependent upon and subject to the control of the beneficiary; and

 

8.  the improvidence of the transaction by reason
of unjust, unreasonable, or unnatural disposition of the property.

 

See Guthrie, 934 S.W.2d at 832, citing Mackie v. McKenzie, 900 S.W.2d
445, 449 (Tex.App.--Texarkana 1995, writ denied).  We review these factors in light of the
summary judgment evidence produced to determine whether the contestant raised a
question of fact.

            A contestant may prove undue
influence by circumstantial evidence, but it must be probative of the issue and
not merely create a surmise or suspicion that such influence existed at the
time the will was executed.  Reynolds v. Park, 485 S.W.2d 807, 813
(Tex.Civ.App.--Amarillo 1972, writ ref’d n.r.e.).  The exertion of undue influence cannot be
inferred by opportunity alone.  Cotten v. Cotten, 169 S.W.3d 824, 827
(Tex.App.--Dallas 2005, pet. denied).  Instead,
“[t]here must be some evidence to show that the influence was not only present,
but [that it was] in fact exerted with respect to the making of the testament
itself.”  Id.  A fact issue is raised
by circumstantial evidence if, from the evidence, a reasonable person would
conclude that the existence of the facts is more reasonable than its
nonexistence.  Smith v. Tennessee Life Ins. Co., 618 S.W.2d 829, 834
(Tex.Civ.App.--Houston [1st Dist.] 1981, no writ).  All that is required is that the circumstances
point to ultimate facts sought to be established with such a degree of
certainty as to make the conclusion reasonably probable.  Id.  For the evidence to be sufficient to raise a
fact question on undue influence, it must be more than purely speculative.  Kirkpatrick
v. Raggio, 319 S.W.2d 362, 366 (Tex.Civ.App.--Fort Worth 1958, writ ref’d
n.r.e.). No fact issue is raised where the evidence is so indefinite and
uncertain as to preclude a finding.  Id.

Existence and Exertion of
Influence

            

            First, we must determine whether
Appellants presented sufficient evidence to create a fact issue as to the
existence and exertion of an influence. 
Initially, Appellants focus on Sidransky’s medical problems during the
late 1990’s and up until her death to support their challenges to the December
1999 and May 2003 wills and trusts.  They
rely in part on an affidavit from Dr. Cynthia Rivera which states: 

4.  My forensic review of Mrs. Noemi Ruth
Sidransky a/k/a/ Noemi Wiener Sidransky’s medical records from the period of
1997 to 2007 determined that Ms. Sidransky was under undue influence when she
signed legal documents such as her Will and Trust, on or about December 15, 1999
and that she was under undue influence when she amended her Trust and Will, on
or about May 15, 2003.  

 

In reading the
entirety of Dr. Rivera’s affidavit, it appears her true conclusion was merely
that Sidransky was “susceptible to undue influence” during the relevant
times.  For instance, in paragraph seven,
Dr. Rivera states: 

7.  The progress notes circa 1998 to early 2000
identify significant disorders that promoted further progression of her memory
loss including, atrial fibrillation, multiple cerebrovascular accidents,
transient ischemic attacks, diabetes (small vessel disease), malignant
hypertension, atherosclerotic heart disease, and a new onset seizure disorder.  Observations made by physicians include
documented memory loss, left-sided arm and leg weakness (hemiparesis), slurred
speech, slow speech (bradydysphasia) and slowed movements (bradykinesia).  The progress notes indicate that conversations
were held with the daughter and not
Mrs. Sidransky.  In February 1999, Mrs.
Sidransky had a four-vessel coronary artery bypass graft.  Post surgery, she had a seizure-like episode and
periods of hypotensive episodes.  Her
blood sugar was difficult to regulate.  With the already documented memory loss,
difficulty with speech, weakness of the left side of her body, exacerbation of
seizures, and diabetes, it is more likely than not that Mrs. Sidransky was
susceptible to undue influence from her primary care provider, and said undue
influence may be manifested in the Will and Trust she executed in December of
1999.

 

[Emphasis in
original].  And in paragraphs eight
through twelve, Dr. Rivera opines: 

8.  With regards to signing the amendment to the
Trust and the Will on or about May 15, 2003, the information used to form an
opinion included medical records from the above time period from Las Palmas
Medical Center, Providence Memorial Hospital, Sierra Medical Center, Dr.
Michael Traylor, Dr. Dionicio Manuel Alvarez, Dr. Mary Ward and Dr. Luis D.
Acosta-Corrales.

 

9.  On November 14, 2002, notes written by Dr.
Acosta-Corrales indicate that Mrs. Sidransky was having periods of confusion, asking
for her already deceased mother and getting extremely upset because ‘they would
not let me see her.’  She was delusional
and having periods of hallucinations.  She
had been having unstable glycemias, sometimes related to her abnormal mental
activity with extreme increases in her blood sugars.  At that time, she was extremely stubborn and
irritable.  She suffered from insomnia
and nocturnal hyperactivity (sundowning).  She had very unstable blood pressures.  She was placed on Seroquel 25mg nightly (an atypical
anti-psychotic) and diagnosed with Multi- infarct dementia with psychotic
features.

 

10.  She was seen by Dr. Alvarez on March 27,
2003.  Her daughter, Graciela Barajas,
had complaints that her mother was more forgetful.  He notes that she was fine and not confused.
He determines that she has Pre-Alzheimer’s and starts her on Aricept (for
Alzheimer’s dementia).

 

11.  She was seen again on June 3, 2003 by Dr.
Acosta-Corrales.  She is confused and
agitated, off and on.  The Seroquel was
discontinued due to cognitive problems (as written above).  ‘She suffers from increasing seizures due to
Atrial fibrillation and recurrent strokes.  Mrs. Sidransky is demented with very poor
recent memory, very poor judgment and insight.  Her higher cortical functions are all below
level.  She is unable to provide historical data with certainty or to engage in
a coherent conversation without asking for the help of her daughter, Graciela.’

 

12.  Given the assessment by the neurologist in
November 2002 and June 3, 2003 and the longstanding progressive nature of her
illness, it appears that Mrs. Sidransky
was susceptible to undue influence exerted by her daughter, Graciela Brajas
[sic] during the time that she amended her Will and Trust, May  15, 2003.

 

[Emphasis in
original].  Even in light of Dr. Rivera’s
affidavit, Sidransky’s weakened physical and mental condition only indicates
her susceptibility to influence; it
is no evidence that such influence existed
in fact.  See Guthrie, 934 S.W.2d at 824, citing
Reynolds v. Park, 485 S.W.2d 807, 813 (Tex.Civ.App.--Amarillo 1972, writ
ref’d n.r.e.).

Overpowering
Sidransky’s Mind At Execution

We
must also assess whether Appellants established that an improper influence
overpowered Sidransky’s mind at the time she executed the instruments.  Appellants again focus on Sidransky’s medical
condition and contend that she was in a weakened mental and physical state at
the time she executed the wills and trusts. 
Such evidence is only indicative of Sidransky’s susceptibility to
influence; it does not establish that her mind was in fact subverted or
overpowered at the time of the execution of the wills or trusts.  See
Guthrie, 934 S.W.2d at 832 (“A testatrix’s weakened physical and mental
condition is only indicative of her susceptibility to influence; it is no
evidence that such influence exists in fact.”).

Appellants
also contend that Graciela was always in close contact with Sidransky and that
she was a dominant daughter who managed all of Sidransky’s money and paid her
bills.  They argue that Graciela
attempted to isolate Sidransky from several of her children, including
Appellants.  Once again these facts only
illustrate that Graciela had the opportunity to unduly influence Sidransky;
they are not proof that Graciela actually exerted influence over her.  See
Estate of Davis v. Cook, 9 S.W.3d 288, 293 (Tex.App.--San Antonio 1999, no
pet.)(determining contacts with testatrix, who was 98 years old at the time,
lonely, isolated, and plagued with physical infirmities, merely created an
opportunity to exert improper influence over testatrix); Guthrie, 934 S.W.2d at 832 (concluding close relationship between
testatrix and executor created opportunity for executor to unduly influence
testatrix).

            Finally, Appellants claim that
Graciela was actively involved in the planning, preparation, and execution of
Sidransky’s will.  Graciela arranged for
Sidransky to meet with Grady in New Mexico. 
We have detailed Grady’s contact with Sidransky and his opinions of her
mental health spanning the years between 1999 and 2003.  It is clear that Grady met with his client in
private for considerable periods of time. 
He found Sidransky to be clear headed and strong willed with no
indication that she was unduly influenced by Graciela.  Independent witnesses at execution verified
Grady’s description.

Execution Would Not Have Happened
But For Such Influence

 

            Lastly, we must assess whether
Appellants established a genuine issue of material fact as to whether there was
an execution of a document which Sidransky would not have executed “but for”
the alleged influence.  Establishment of
this element is generally predicated upon an assessment of whether the
testament provides for an unnatural disposition of the property.  See
Estate of Davis,
9 S.W.3d at 294.  In this respect, only
where all reasonable explanation for the devise is lacking may the trier of
facts consider the disposition as evidence of disorder or lapsed
mentality.  Id.

            Appellants contend that Sidransky’s
decision to exclude certain children is unnatural and some evidence of undue
influence.  The fact that a testatrix
chooses to distribute her estate among a number of children or relatives making
one bequest larger than another, or the fact that a testatrix chooses to
exclude certain children from a will while providing for others is not in and
of itself evidence of undue influence.  A
person of sound mind has the right to dispose of his or her property in the
manner he or she wishes.  Rothermel v. Duncan, 369 S.W.2d 917, 923
(Tex. 1963). 

Sidransky
clearly believed that certain children were stealing from her.  That may or may not be true.  She described the “two camps” and advised Grady
that one camp was loyal to her and the other was not.  She specified her “disfavored children” and
told Grady to omit them from the will and trust.  Witnesses from the execution of the 1999 will
and the witness of the execution of the 2003 will verified Sidransky was of
sound mind and under no constraint of undue influence.  Because none of the summary
judgment evidence raises a genuine issue of material fact on the existence and
exertion of influence by Graciela, the trial court properly granted Graciela’s
motion for summary judgment.  Finding no
error, we affirm the judgment of the court below.  May she rest in peace.

 

 

August 15, 2012                                 ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.











[1]  Graciela moved for summary judgment on both
traditional and no evidence grounds.  The
trial court granted the motion without specifying which grounds he relied upon
in making the decision.  Because our
analysis under no evidence grounds is dispositive of the issues, we need not
address Appellants’ complaint to the extent it relates to Graciela’s
traditional motion for summary judgment.